RUBE F. SAMUELS & another *vs.* CHARLES E. FOGG COMPANY & others.

Suffolk. November 17, 1926. — February 28, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Equity Jurisdiction,* Conveyance in fraud of creditors. *Mortgage,* Validity.

A corporation in financial difficulties with unsecured indebtedness amounting to $122,000 asked its creditors to take notes deferring payments to be secured by a mortgage of its property. Creditors to whom there was owing $100,000 assented and the mortgage was given conveying the property to the grantees in trust "for the equal pro rata benefit and security of the lawful holders and owners of these said notes above described without any preference of one over the other by reason of priority or otherwise." Until default, the corporation was to retain and use the property and to make profit from the same as fully and freely as if the indenture had not been made, and in the ordinary course of business to sell and dispose of the mortgaged materials, supplies, findings and merchandise. If the corporation should pay the notes at maturity, keep up the property, pay all taxes and insurance and perform its other agreements, then the mortgage would be void. Upon default the trustee was empowered to sell the property, applying the net proceeds to pay the notes secured, and to turn the balance not used back to the corporation. A creditor who had refused to assent brought a suit in equity to establish his debt against the corporation and to reach and apply towards its payment the property thus conveyed in mortgage. A judge who heard the suit found that "The purpose of this mortgage was not to secure all creditors but only those who assented to the proposition to take notes, and it prevented the other creditors from

attaching the mortgaged property, so that it might defer paying them and at the same time continue its business. This tended to hinder, delay and defraud the plaintiff and was the intent of the company and the trustees." A decree was entered for the plaintiff. The defendants appealed. *Held*, that

(1) The finding by the trial judge was interpreted to mean that because of the mortgage creditors were prevented from attaching the property and were thus hindered, delayed and defrauded, and in that way the corporation was enabled to defer paying them and to continue in business; and that it was the intention of both parties that by the mortgage the corporation would be enabled to accomplish this result;

(2) The trial judge erred in such ruling since nonassenting creditors were not prevented from attaching the mortgaged property in an action at law;

(3) The mere fact, that the mortgagor intended by the mortgage to put the property where it could not be interfered with by nonassenting creditors during the carrying out of the terms of the mortgage, did not make the mortgage invalid: the assenting creditors obtained merely what was due them;

(4) The fact that the mortgagor was permitted to sell goods in the regular course of trade did not of itself render the mortgage invalid as to the plaintiff;

(5) No fraud appearing in the mortgage transaction, it was valid and the bill must be dismissed.

BILL IN EQUITY, filed in the Superior Court on February 24, 1925, and described in the opinion.

In the Superior Court, the suit was heard by *Burns*, J., who filed findings of fact and rulings of law described in the opinion and by whose order a final decree was entered directing the defendant corporation to pay to the plaintiffs $2,945.07 and costs, and that in default of such payment execution issue against the property described in the mortgage given by the corporation to the other defendants. The defendants appealed.

*J. H. Morson*, for the defendants.

*W. J. Barry*, for the plaintiffs.

SANDERSON, J.    This is a bill by a partnership creditor of the defendant corporation seeking to have the amount of its indebtedness established and to have an indenture, called a trust mortgage, given by the defendant corporation to the individual defendants, declared null and void upon the ground that the mortgage was given primarily for the benefit of creditors who became parties to it and was intended to

place the property of the corporation beyond the reach of other creditors and to hinder, delay and defraud them.

In September, 1924, the corporation was unable to meet its liabilities. A letter, written by counsel for the corporation to the plaintiffs and other unsecured creditors having claims of more than $100, indicates that a proposal was made to all of its creditors to accept in payment of their claims notes of the corporation to be paid in instalments. These notes were to be secured by a mortgage of real and personal property given by the corporation to the individual defendants as trustees. It appears that creditors holding claims amounting to approximately $100,000 out of a total unsecured indebtedness of approximately $122,000 accepted such notes. The plaintiffs were asked to take a note in payment of their claim as of September 22, 1924, and to join in the extension plan of paying the indebtedness secured by the mortgage. This they declined to do.

The trust indenture was dated September 22, 1924. It purported to be a mortgage by the corporation of real estate, machinery, merchandise, findings and other personal property to secure payment of the notes accepted by creditors. The *habendum* was to the grantees in trust "for the equal pro rata benefit and security of the lawful holders and owners of these said notes above described without any preference of one over the other by reason of priority or otherwise." Until default, the corporation was to retain and use the property and to make profit from the same as fully and freely as if the indenture had not been made; and in the ordinary course of business to sell and dispose of the mortgaged materials, supplies, findings and merchandise. The indenture provided in substance that if the corporation should pay the notes at maturity, keep up the property, pay all taxes and insurance and perform its other agreements, then the mortgage would be void. Upon breach of condition the trustees were given the right to take possession of the property and run the business and receive income and profits for the benefit of the holders of the notes, or they might foreclose by sale, or in a certain event be entitled to a conveyance from the corporation of its interest in the property. After taking out ex-

penses of trustees, they were to use the income or proceeds of sale received by them for the payment of the principal of the notes secured by mortgage and after paying all these liabilities the surplus was to be turned over to the corporation. The corporation was given power to dispose of any of the implements, tools, appliances, furniture or other like personal property which may have become unfit for use, substituting like property of equal value to be subject to the mortgage. The three trustees were empowered to act in accordance with the will of a majority of their number. At the time the mortgage was given, Charles E. Fogg, the president of the company, assigned to the trustees enough stock to give them a controlling vote, as additional collateral security for the payment of the notes, with authority in case of default continued for thirty days to sell the stock and use the proceeds in the same way as the money received from the mortgaged property was to be applied. All of the unsecured creditors who failed to accept notes, except the plaintiff, have been paid in full.

One of the contentions of the corporation was that it had sufficient property free from encumbrances which the plaintiff could attach. The trial judge in dealing with this matter in the findings of fact said, "I am unable to find what this said other property consists of or where it is located." The corporation has continued in possession of the property described in the indenture, has made no default in the payment of notes, and has made no breach of the conditions or covenants in the mortgage. The amount found to be due the plaintiffs from the corporation, as agreed by the parties in an accounting October 10, 1924, was $2,719.18, and the corporation owes that sum with interest from October 10, 1924. The plaintiffs have waived any other claim of indebtedness or damage.

The trial judge found that "The purpose of this mortgage was not to secure all creditors but only those who assented to the proposition to take notes, and it prevented the other creditors from attaching the mortgaged property, so that it might defer paying them and at the same time continue its business. This tended to hinder, delay and defraud the

plaintiffs and was the intent of the company and the trustees." The decree ordered the defendants to pay the amount of the indebtedness as stated above with interest and costs in a stated sum within thirty days, and in default thereof that execution issue against the property described in the mortgage. From this decree the defendants appealed.

We interpret the finding to mean that because of the mortgage creditors were prevented from attaching the property and were thus hindered, delayed and defrauded, and in that way the corporation was enabled to defer paying them and to continue in business; and that it was the intention of both parties that by the mortgage the corporation would be enabled to accomplish this result. The decree seems to be based solely on this view of the facts and the law. The judge was in error in deciding that the mortgage prevented creditors from attaching the mortgaged property. Their right to attach mortgaged real estate is given by G. L. c. 223, § 42, and c. 236, § 1, and to attach personal property in the possession of the mortgagors, by G. L. c. 223, § 79. See *Whitney* v. *Metallic Window Screen Manuf. Co.* 187 Mass. 557. The rights of the attaching creditor are subject to those of the mortgagee. *Rund* v. *Blatt,* 170 Mass. 469. G. L. c. 236, §§ 9, 27.

There are no subsidiary findings which as matter of law make the mortgage fraudulent as to creditors. The indenture was in legal effect a mortgage to secure the notes given by the corporation to the fifty-seven creditors who accepted them in payment of its unsecured debts to them. *Harriman* v. *Woburn Electric Light Co.* 163 Mass. 85. *Goodwin* v. *Cosmopolitan Trust Co.* 248 Mass. 146. These notes represented an actual indebtedness of the corporation. When a mortgage is given to secure a debt, it may be valid even if the debtor did not intend to pay his other creditors and did intend to put his property where such creditors could not reach it. *Lyon* v. *Wallace,* 221 Mass. 351, 353. If the creditor merely obtains what is due him, there cannot be said to be fraud in the transaction. *Giddings* v. *Sears,* 115 Mass. 505, 508. *Carr* v. *Briggs,* 156 Mass. 78. A mortgage to secure a genuine liability is invalid only if the mortgagee

knew of and participated in a fraudulent purpose of the mortgagor. *Cohen* v. *Levy,* 221 Mass. 336. The creditor receiving payment or security for his debt participates in the purpose of the debtor to hinder, delay and defraud creditors if in the transaction he becomes a party to a secret trust in favor of the debtor. *Cosmopolitan Trust Co.* v. *S. L. Agoos Tanning Co.* 245 Mass. 69, 73. "The distinction is between a transfer of property made solely by way of preference . . . and a similar transfer made with a design to secure some benefit or advantage therefrom to the debtor." *Bernard* v. *Barney Myroleum Co.* 147 Mass. 356, 357. *Banfield* v. *Whipple,* 14 Allen, 13. The fact that the mortgagor was permitted to sell goods in the regular course of trade does not of itself avoid the mortgage. *Fletcher* v. *Powers,* 131 Mass. 333. In *Illinois Watch Case Co.* v. *Cowan-Myers Co.* 250 Mass. 347, the assignment to the trustees was absolute and was intended to convey and did convey the title, possession and control of all the property and business to the defendant; and it provided that the trustees should conduct the business, and in other respects it is distinguishable in its facts from those in the case at bar.

The decree having been based upon a view of the law which we do not adopt must be reversed and a decree entered dismissing the bill with costs.

*So ordered.*