BANCA ITALIANA DI SCONTO *vs.* HERBERT B. BAILEY
& another.

Suffolk.     March 18, 1927.— May 24, 1927.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Equity Jurisdiction,* To set aside conveyance in fraud of creditors.
*Mortgage,* Of real estate: validity. *Payment. Evidence,* Competency,
Remoteness.

In the absence of a secret trust for the debtor, a conveyance of property
by a debtor to a creditor by way of preference over other creditors is
not voidable by the other creditors at common law merely because it
was sought by the preferred creditor with knowledge that the debtor
was insolvent, that the property conveyed was all the debtor owned,
that the debtor's creditors were about to seize the property under some
process of law, and that the conveyance to him would prevent such
other creditors from collecting or receiving anything on their claims.

A liquidating agent appointed by the commissioner of banks in possession
of the property and business of a trust company, discovering in the
assets of the trust company obligations of a corporation whose financial
condition was questioned, discussed with representatives of two other
creditor banks the taking of joint security for the three banks.   The
banks realized that the company was in such financial condition that
the only salvation for their loans was for the debtor corporation to
have time to work out its difficulties free from interference of creditors
or bankruptcy proceedings.   The attorney for the liquidating agent
believed that his company would not be adequately protected by a
mortgage to it alone and that evil consequences would follow a sub-
stantial attachment of the debtor's property by his or by any creditor
corporation.   A mortgage of the debtor corporation's real estate there-
upon speedily was prepared by the attorney for the liquidating agent
and was executed and delivered by the debtor corporation, running
to a nominee of the three banks as an individual and securing the pay-
ment of their combined claims.   At the time the mortgage was given,
it was understood that the banks would forbear to sue or begin pro-
ceedings in bankruptcy against the debtor corporation.   In procuring
the mortgage, the banks did not have in mind any specific creditor as
being about to attach, but feared that attachments might be made at
any time; and one of the purposes of the mortgage was to permit the
debtor corporation to remain in control of and to continue its business
free from interference by any one through proceedings in court or
otherwise which would result in the failure and enforced liquidation of
the company.   A creditor, who attached the real estate of the debtor
corporation after the recording of the mortgage, sought by a bill in
equity to set the mortgage aside as intended to hinder, delay, and de-
fraud creditors of the mortgagor. *Held,* that

(1) The contention of the plaintiff, that the facts required a finding that the attorney for the liquidating agent in doing as he did was not acting merely with the proper diligence of one creditor having as his sole purpose the procuring of a lawful preference, could not be supported;

(2) A finding by the judge, that the mortgage "was given as security for valid debts" and "not for the purpose of hindering, delaying or defrauding the company's creditors," was not wrong as a matter of law, and was not clearly wrong as a matter of fact;

(3) The exclusion, at the hearing of the suit above described, of evidence of conduct by the debtor corporation following the giving of the mortgage in question which would warrant an inference "that this company has placed or undertaken to place all of its property continually beyond the reach of its creditors," was proper because the logical connection between the evidence and the issue on trial was too remote in point of time;

(4) A finding, that the giving of new notes at the expiration of the original notes secured by the mortgage was in renewal and not in payment of the old notes, in the circumstances was not clearly wrong and was not violative of any rule of law as to the effect by way of payment of the giving of new notes in place of original notes which are secured by mortgage of real estate or by other securities.

BILL IN EQUITY, filed in the Superior Court on February 19, 1926, and described in the opinion.

The suit was heard by *Hammond*, J., a stenographer having been appointed under G. L. c. 214, § 24, Equity Rule 29 (1926), to take the evidence. Material facts are stated in the opinion.

The plaintiff offered and the judge excluded "evidence in reference to the way in which the Columbia Counter Company handled its property at all times from this time on down through, right down to the date of their assignment for the benefit of creditors, — for the purpose of showing they placed their checking accounts in the names of third parties but didn't check on their own; but that checks were drawn by the officers of the company on them; that they brought foreclosure proceedings of certain mortgages which were the property of the company, and the foreclosure deeds were made to the same individuals holding them as straws for the Columbia Counter Company; that they organized a new corporation known as the International Counter Company which had an office in the building directly below the office of the Columbia Counter Company; that all the work for that

company was done by Miss Wells and another stenographer, who were really employed by the Columbia Counter Company; that the books of the International Counter Company were kept by Miss Wells in the office of the Columbia Counter Company and the letters that went on their letterhead were written by Miss Wells, all the typewriters and so forth of the Columbia Counter Company being owned by Mr. Way, [a defendant] in whose name some of the funds stood in said bank account and who took the foreclosure deeds of the property of the Columbia Counter Company without any consideration; all for the purpose of showing a continuing intention which began with the making of the mortgages and continued right on down to the present time; that this company has placed or undertaken to place all of its property continually beyond the reach of its creditors."

The judge excluded a certified copy of a mortgage from the Columbia Counter Company to Benilde B. Malaguti, wife of Charles D. Malaguti, a director and president of that company, securing a note for $15,040 and dated February 20, 1921, and acknowledged on February 21, 1921, by Edward C. Hood, treasurer of the company, the offer being made to show an intention on the part of the company to put its "property in such shape that it could not be reached by attaching creditors."

The plaintiff asked for and the judge refused to give the following among other rulings:

"18. If the Columbia Counter Company and Herbert B. Bailey or the three banks for whom he was acting intended by the mortgage to Bailey to create a situation as to all or substantially all of the tangible attachable property of the Columbia Counter Company which would hinder, delay or defraud the creditors of the Columbia Counter Company in the enforcement of their legal rights the mortgage is void as against the plaintiff's attachments, even if this was not their sole purpose, and even if their principal purpose was to secure the indebtedness of the Columbia Counter Company to the banks.

"19. If one purpose of the Columbia Counter Company and Herbert B. Bailey or the banks for which he was acting

was to enable the Columbia Counter Company to have time in which to work out its indebtedness without interference meanwhile by suits, or attachments or court proceedings of creditors the mortgage is void as against the plaintiff's attachment.

"20. If one purpose of the Columbia Counter Company and Herbert B. Bailey or the banks for which he was acting was to make less likely the attachment of its property by the plaintiff, or to delay the enforcement of the plaintiff's rights until such time as might be necessary for the working out of the financial difficulties of the Columbia Counter Company, the mortgage is void as against the plaintiff's attachment."

By order of the judge, a final decree was entered dismissing the bill. The plaintiff appealed.

*M. C. Taylor,* for the plaintiff.

*R. B. Baldwin,* for the defendants.

PIERCE, J. This is a bill in equity to establish the priority of an attachment made by the plaintiff of premises owned by the Columbia Counter Company, in Waltham, Massachusetts, over a prior $50,000 mortgage from that company to the defendant Bailey, on the ground that the mortgage was a fraudulent conveyance, and was not a valid corporate act of the Columbia Counter Company. The case was tried in the Superior Court before a judge who, upon reported testimony, made findings of facts, rulings of law, and ordered a decree. The case is before this court on appeal from a final decree dismissing the bill.

The following material facts are not in dispute: The plaintiff brought suit in Suffolk County on a writ dated February 19, 1921, against the Columbia Counter Company as indorsee of a promissory note dated February 29, 1920, made by that company. Upon this writ on February 24, 1921, an attachment was made of the interest of the said company on all real estate owned by it in Middlesex County. On February 23, 1921, the Columbia Counter Company executed and delivered to the defendant Herbert B. Bailey a mortgage for $50,000 covering its factory property, including buildings and real estate, on River Street in Waltham, to secure the

sum of $50,000 payable in six months. The mortgage was recorded in the registry of deeds in Cambridge at 3:47 P.M. February 23, 1921. The suit brought by the plaintiff against the Columbia Counter Company, after trial and verdict for $29,008.55, now stands continued for judgment.

Upon February 23, 1921, the Columbia Counter Company owed the International Trust Company $35,000, the Boylston National Bank $40,000 and the Prudential Trust Company $28,874.83. This indebtedness represented money loaned to the company at various times. At the date of the mortgage the company was unable to meet its obligations to the three banks. For some time previous thereto the banks had been pressing for security or a reduction of the indebtedness and discussions upon the subject had gone on between the officers of the company and the banks. Before February 21, 1921, the attorney for the liquidating agent of the Prudential Trust Company, in the hands of the bank commissioner, discussed with the presidents of the International Trust Company and the Boylston National Bank the question of taking joint security for the benefit of all three banks. On February 19, 1921, counsel for the plaintiff wrote a letter to the Columbia Counter Company making a peremptory demand for the payment of the note held by the plaintiff. The attorney for the liquidating agent learned on February 19 or 21, 1921, that the plaintiff had taken action to press its claim; and on the latter date he began to prepare the $50,000 real estate mortgage, the mortgage notes, and the votes authorizing the execution of these instruments. On February 23, at 12:22 P.M., the Prudential Trust Company was served with a trustee process upon the suit brought by the plaintiff, *supra*.

On the same afternoon a special meeting was held at the Columbia Counter Company's office in Boston, at which all officers and directors, together constituting all the stockholders, were present. Votes were passed unanimously authorizing the treasurer, Edward C. Hood, to execute, acknowledge and deliver in the name of the corporation the mortgage of real estate and a mortgage of personal property. No notice of the meeting was sent out and no waiver of

notice was signed. At the meeting both the mortgages and the mortgage notes were executed and the mortgages were thereafter recorded. At the time the mortgages were given it was understood that the banks would forbear to sue or begin proceedings in bankruptcy against the Columbia Counter Company. The mortgagee named in each mortgage was the defendant Herbert B. Bailey, then the assistant cashier of the Boylston National Bank, who had been agreed upon by the Columbia Counter Company and the banks as the person to hold the mortgages for the joint benefit of the banks. After the mortgages were given Bailey executed a paper in the nature of a declaration of trust declaring that he had received the mortgages from the Columbia Counter Company "for the purpose of securing or partly securing the indebtedness of said corporation to the Boylston National Bank of Boston, to the International Trust Company of said Boston, and to the Prudential Trust Company of said Boston." The proceeds of the mortgages were to be paid over to these banks "in proportion to the indebtedness of the Columbia Counter Company to each on the day when said proceeds become payable." This declaration was not recorded in the registry of deeds. Neither mortgage described Herbert B. Bailey as trustee, and he testified, in substance, in reference to the declaration of trust that he did not know in whose handwriting the words of the trust were, whether the words were on it when he signed it, where the paper was prepared or by whom, or where he signed it; that he did not know at whose suggestion he was trustee or when he first knew it; that he had nothing to do with the preparation of the declaration of trust; and that it was prepared by someone and brought to him for signature.

The judge made a careful statement of the evidence relating to the Columbia Counter Company's indebtedness to the banks since the delivery of the mortgages on February 23, 1921, and concluded therefrom that the notes held on that day by the Prudential Trust Company amounting to $28,-874.83 were never renewed. On October 5, 1921, the sum of $25,834.88 then being due, the liquidating agent sold

these notes to the International Trust Company and the Boylston National Bank for $12,500; and the Columbia Counter Company gave a new note for $5,800 to the International Trust Company and one of $6,700 to the Boylston National Bank and charged off the balance, $13,334.88.

On February 23, 1921, the indebtedness due from the Columbia Counter Company to the International Trust Company was $35,000, represented by three notes. These notes were indorsed by one Hood and one Malaguti. On maturity the Columbia Counter Company gave the bank its check for the amount of the maturing note, which was then surrendered to it; and, as a part of the transaction on the same day gave the bank a new note for a like amount. This practice was followed at the time of all maturities. On the company's books an entry of the transaction was made as a payment; on the books of the bank the entry indicated a renewal. The judge found that the notes given at the maturity of the original notes due were renewals. In the year 1923, the International Trust Company was consolidated with The First National Bank of Boston; it then held three notes of the Columbia Counter Company aggregating $40,800, indorsed by Hood and Malaguti. These notes were renewed at maturity by notes indorsed by Hood, Malaguti and one Taplin, and were afterwards renewed twice; the notes given at the last renewal were made payable to The First National Bank of Boston on demand, and, as they stood at the hearing, represented through reductions of the principal amount an indebtedness of $23,507.58.

On February 23, 1921, the indebtedness due from the Columbia Counter Company to the Boylston National Bank was $40,000, represented by four notes indorsed by Hood and Malaguti. The judge finds that these notes were renewed at maturity by new notes which have all been indorsed by Hood and Malaguti. On July 12, 1923, the assets of the Boylston National Bank were bought by the Fourth Atlantic National Bank and the Commonwealth National Bank which were thereafter merged. The notes of the company then outstanding were renewed at maturity, and are outstanding payable on demand to the Commonwealth

Atlantic National Bank.  Each note as renewed was indorsed by Hood and Malaguti.

The mortgagee Bailey never made any demand on any of the indorsers of any of the notes, nor had any conversation with any of them in reference to payment.

The evidence, while not conclusive, warranted findings, as the plaintiff contends, that the banks realized the company was in such financial condition that the only salvation of their loans was for the company to have time to work out its difficulties free from interference of creditors or bankruptcy proceedings; that the attorney for the liquidating agent believed he could not "get away" with a mortgage for the benefit of the Prudential Trust Company alone, that evil consequences would follow a substantial attachment by the Prudential Trust Company or by any creditor; that the banks did not have in mind any specific creditor as being about to attach, but feared that attachments might be made at any time; that one of the purposes of the mortgage was to permit the company to remain in control of its factory and machinery and to continue its business free from interference by any one through "proceedings in court or otherwise as would result in the failure and enforced liquidation of the company."  The evidence warranted the further contention of the plaintiff that the company realized it could not meet its obligations as they became due; that to satisfy them it must have time to work out its difficulties, and believed that it could do so if it was not forced to pay its loans and debts at that time; that the attorney for the liquidating agent focused his entire energies on getting the papers prepared, properly executed and recorded before the plaintiff or any creditor made an attachment in Middlesex County; that he was trying to do the best thing he could for the Prudential Trust Company, and the best way for it to get its money was to make an arrangement with the other banks "thereby getting their good will and their coöperation" with him in extending that time and putting the Columbia Counter Company in a situation so it could go on for a while without interference or proceedings in bankruptcy or other litigation.

The contention of the plaintiff that the facts required a

finding that the attorney for the liquidating agent in doing as he did was not acting merely with "the proper diligence of one creditor having as his sole purpose the procuring of a lawful preference" cannot be supported. Upon all the evidence the judge found that the mortgage "was given as security for valid debts" and "not for the purpose of hindering, delaying or defrauding the company's creditors." It is the contention of the plaintiff that this finding was clearly wrong as a finding of fact based on the evidence, and was wrong as a ruling of law because it is not consistent with the principle of law governing this sort of conveyance, which, it contends, is embodied in its requests numbered 18, 19 and 20. In the absence of a secret trust for the debtor, it is not fraudulent for a creditor to seek and obtain a conveyance of property of his debtor by way of preference over other creditors, merely because the creditor knows his debtor is insolvent, that the property conveyed is all the debtor owned, that the debtor's creditors are about to seize the property under some process of law, and that the conveyance to him will prevent such other creditors from collecting or receiving anything on their claims. *Giddings* v. *Sears*, 115 Mass. 505. *Cosmopolitan Trust Co.* v. *S. L. Agoos Tanning Co.* 245 Mass. 69. It is settled that a fraudulent conveyance may as well be by mortgage as by deed. *Crowninshield* v. *Kittridge*, 7 Met. 520. It is said in *Banfield* v. *Whipple*, 14 Allen, 13, 14, 15, quoted with approval in *Giddings* v. *Sears, supra.* "If a debtor is unable to pay all his debts, he commits no fraud . . . by appropriating his property to the satisfaction of one or more of his creditors to the exclusion of all others. Nor does it make any difference that both the creditor and debtor know that the effect of such appropriation will be to deprive other creditors of the power of reaching the debtor's property by legal process in satisfaction of their claims. If there is no secret trust agreed upon or understood between the debtor and creditor in favor of the former, but the sole object of a transfer of property is to pay or secure the payment of a debt, the transaction is a valid one at common law. The distinction is between a transfer of property made solely by way of preference of one creditor over others, which is legal,

and a similar transfer made with a design to secure some benefit or advantage therefrom to the debtor, which is fraudulent and illegal."

The question is, Was the conveyance made and received with a purpose and design to cut off the rights of other creditors? If so, the conveyance is fraudulent as to such creditors, without regard to the nature or amount of the consideration for the conveyance. *Lynde* v. *McGregor*, 13 Allen, 172, 181. *D'Arcy* v. *Mooshkin*, 183 Mass. 382, 384. On the other hand, if there be no such intent the mortgage stands for not only the advances previously made but, provided the mortgage so states, for advances thereafter made, even after an attachment. *Commercial Bank* v. *Cunningham*, 24 Pick. 270. In a word the conveyance is not fraudulent as against a creditor if the hindrance and delay which follow the conveyance are the natural consequence of the mortgage being upon the property and it was not given and received with the sole intent that such delay should follow.

Evidently ruling upon requests numbered 18 and 19 and 20, the judge said: "If the company received any benefit from the transaction by preferring the banks over its other creditors and thus saving itself from having its business interfered with by suits or bankruptcy petitions brought by them, such a benefit was legitimate and was not a fraud upon its other creditors. Furthermore, if by the giving of the personal property mortgage to the banks as security other creditors were discouraged from attaching the personal property and if the company derived a corresponding benefit from that fact, such a result flowed from the law relating to the attaching of mortgaged property and such benefit was tainted with no fraud as regards creditors." This ruling, as we understand it, was not against the law as indicated in these requests, but was a statement of the law applicable to the fact found that the mortgage was given "as security" and "not for the purpose of hindering, delaying or defrauding the company's creditors." A consideration of all the evidence and of the findings by the judge, leads to the conclusion that the judge made a finding of fact

on the question of the intent of the Columbia Counter Company and the defendant to hinder and delay creditors; that the finding was not wrong as a matter of law, and was not clearly wrong as a matter of fact.   It results that the finding must stand.

There was no error in the exclusion of the evidence of the way the company handled its property after the date of mortgage, for the purpose of showing a continuing intention which began with the making of the mortgages and continued to the time of the hearing, and "that this company has placed or undertaken to place all of its property continually beyond the reach of its creditors."   The evidence of the defendants' intent may be shown by evidence of other transactions which are a part of a scheme to defraud.   *Parkman* v. *Welch,* 19 Pick. 231.   *Lynde* v. *McGregor, supra.*   In this case the logical connection was too remote in point of time; and for that reason, if for no other, the evidence was excluded rightly.   The evidence as to the mortgage to Mrs. Malaguti was refused rightly, and if not, the error of its refusal is negligible in its effect in the determination of fact.

Without an analysis of the evidence other than has been presented, we are of opinion that the finding by the judge that the notes which the mortgage was given to secure have not been paid is warranted by the evidence, is not clearly wrong, and is not violative of any rule of law as to the effect by way of payment of the giving of new notes in place of original notes which are secured by mortgage of real estate or by other securities. ʻ*Cotton* v. *Atlas National Bank,* 145 Mass. 43, 45.   *O'Conner* v. *Hurley,* 147 Mass. 145, 150.   *Jeffrey* v. *Rosenfeld,* 179 Mass. 506, 509.   *Stebbins* v. *North Adams Trust Co.* 243 Mass. 69.

All the requests were refused rightly on the facts found.

*Decree affirmed with costs.*