SADIE F. SHAY *vs.* J. ERNEST GAGNE & another.

Middlesex.    November 14, 1930. — May 25, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Mortgage,* Of personal property: validity, consideration. *Practice, Civil,*
Requests, rulings and instructions. *Evidence,* Of fraud. *Words,*
"Debt."

In order to enable the proprietor of a business to secure capital therefor,
an uncle of his wife indorsed two of his promissory notes. The pro-
prietor previously had conveyed his house and land to his wife, and
they had given a mortgage thereon. Subsequently, at a time when
the uncle had learned that the mortgage had been or was to be fore-
closed, the proprietor gave him a promissory note for slightly less
than the total of the two notes which the uncle had indorsed, secured
by a duly recorded mortgage upon the chattels used in his business,
the mortgage providing that the mortgagor might retain possession
and use of the chattels until default. It was given to protect the
uncle from loss upon his indorsements, the uncle also desiring "to
protect the mortgagor and carry him along so that he . . . would
eventually come out all right." The uncle did not know the amount
or value of the proprietor's stock in trade. The mortgage was not
intended by the parties thereto to result in benefit to the proprietor
or the uncle, or to hinder or delay the proprietor's creditors to a
greater extent than would be the natural consequence of the giving
of the mortgage. Subsequently one of the proprietor's notes was
paid, the uncle paying one half the sum due thereon. Thereafter, the
property covered by the mortgage was attached, while in the pro-
prietor's possession, in an action against him in a district court, and
the uncle was summoned as trustee under G. L. c. 223, §§ 79–83.
The trial judge found the mortgage was valid and ordered the plain-
tiff to pay to the uncle the sum he had paid on the proprietor's first
note and the amount of the second note, with interest. *Held,* that

(1) The liability of the uncle as indorser of the proprietor's notes
was an antecedent "debt" within the meaning of § 3 of c. 109A,
added to the General Laws by St. 1924, c. 147;

(2) Such antecedent debt was not "disproportionately small" in
comparison with the amount of the mortgage which, when it was
given, was less than the amount of the mortgagee's contingent lia-
bility as an indorser;

(3) A conclusion was not required as a matter of law that the con-
sideration for the mortgage was inadequate;

(4) A conclusion was not required as a matter of law that the mort-
gagee did not receive the mortgage in good faith;

(5) The circumstance that the amount of the mortgage was larger than the amount of the mortgagee's "matured," "absolute" or "fixed" liabilities did not invalidate the mortgage, since the amount of the mortgage was no larger than necessary fully to secure the mortgagee against his contingent liability as an indorser;

(6) A conclusion was not required as a matter of law that there was any actual fraudulent intent on the part of the mortgagor participated in by the mortgagee;

(7) If the consideration were recited incorrectly in the mortgage, that did not invalidate it as a matter of law;

(8) The finding as to the validity of the mortgage could not be said to be erroneous.

There was no error at the trial above described in a refusal to give certain rulings requested by the plaintiff on the ground that they "were not applicable to the facts as found," where such rulings were predicated upon facts which were not specifically found nor necessarily to be inferred from the evidence and the facts found.

CONTRACT. Writ in the District Court of Lowell dated January 10, 1929.

Arthur Genest, mortgagee of personal property of the defendant J. Ernest Gagne, was summoned as trustee under G. L. c. 223, §§ 79–83. Material facts found by the judge at the trial in the District Court and rulings requested by the plaintiff and refused with reference to such mortgage are stated in the opinion. The judge found that the mortgage was valid and ordered the plaintiff to pay the sums of $867 and $750 with interest. A report to the Appellate Division for the Northern District was dismissed. The plaintiff appealed.

*N. Peikes*, for the plaintiff.

*A. L. Eno & E. O. Turcotte*, for the trustee, Genest, submitted a brief.

FIELD, J. This is an action of contract, brought in the District Court, on a joint and several promissory note of the defendants J. Ernest Gagne and his wife Loretta Gagne. Certain articles of personal property belonging to the defendant J. Ernest Gagne, in his possession, were attached and one Arthur Genest was summoned as trustee. See G. L. c. 223, §§ 79–83. The trial judge found against the principal defendants.

The trustee answered that he had not in his possession "any goods, effects, or credits of said defendants, except

that" the personal property attached, located in the city of Lowell, was subject to a mortgage for $2,450 and interest, given him by the defendant J. Ernest Gagne. He filed a motion that the court adjudge this chattel mortgage to be valid and order the plaintiff to pay him the sum found to be due thereon. At a hearing upon this motion the plaintiff made eighteen requests for rulings of which the fourth, fifth, seventh, eighth, and eleventh to eighteenth, inclusive, were refused "for the reason that they were not applicable to the facts as found." The trial judge found that the mortgage in question was valid as against the plaintiff and directed her to pay it within ten days from the date of the finding "in the sum of $867 with interest at the rate of six per cent, per annum from April 3, 1929, plus $750, with interest at the same rate from December 3, 1928, and costs." At the request of the plaintiff the questions of law raised at the hearing were reported. The report sets forth that "there was also evidence tending to show and the court found" certain subsidiary facts, and that this was "all the evidence material to the questions reported." The Appellate Division dismissed the report and the plaintiff appealed.

The facts found include the following: The trustee is an uncle of the defendant Loretta Gagne. Her husband, the defendant J. Ernest Gagne, was engaged for a period of about four years before the date of the attachment, (January 12, 1929,) in the business of carrying on a "remnant store" under the name of "Baker and Company." In order to furnish him with capital in his business the trustee indorsed his promissory notes. Early in December, 1928, said trustee learned that a house and land "had been sold or was being advertised for sale under the power in a mortgage" thereon given by said defendant, and "knew or had reason to believe" that said defendant "was being pressed . . . for payment of said mortgage." On December 17, 1928, the trustee was one of two accommodation indorsers on a note of said defendant, dated October 3, 1928, for $1,800 payable three months from date, with interest, and on another note for $750, payable six months after December 3, 1928, with interest. Said defendant then executed

a promissory note for $2,450, payable to the order of the trustee on demand, with interest at seven per cent, and a mortgage securing said note of the personal property now in question — "fixtures, stock of goods, and other articles of personal property" in his store — "also covering all after acquired property bought to replace that sold in the course of business," which mortgage was duly recorded the next day in the office of the city clerk. According to the terms of the mortgage the mortgagor, prior to default, was permitted to "retain possession of the . . . mortgaged property and . . . use and enjoy the same." The trustee "wanted to protect himself from indorsements and also wanted to protect the mortgagor and carry him along so that he . . . would eventually come out all right." He "did not know that the defendant . . . [J. Ernest Gagne] was doing business under the name of Baker and Company or that a certificate to that effect had been recorded in the office of the city clerk" and "had no knowledge at the time the mortgage was executed . . . as to the amount or value of . . . [said defendant's] stock in trade." The "mortgage in question was given to save . . . [the mortgagee] from loss as an indorser upon the two notes then outstanding and any renewals thereof." At "the time said mortgage was given the business so being carried on by the defendant [J. Ernest Gagne] . . . was 'not good but fair.'" He "did not purchase any goods after he gave the mortgage." The "personal property in question was in his possession at the time the attachment was made." On or before January 3, 1929, the defendant J. Ernest Gagne paid the interest and $100 on account of principal on his note of October 3, and gave a renewal thereof with the same accommodation indorsers. On April 3, 1929, this defendant's note for $1,700 was taken up and the trustee paid the sum of $867, one half the amount due thereon. On December 3, 1928, the note for $750 was still outstanding. These are the amounts which, with interest, the plaintiff was ordered to pay.

The trial judge found also, if material, that "the defendant J. Ernest Gagne on September 7, 1928, conveyed

to his wife . . . all his interest in . . . a house and land . . . where they made their home and which they were holding as tenants in common or joint tenants or tenants by the entirety . . . [and] on the following day . . . [they] joined in making a mortgage of the same premises for $1,000" and that said deed and mortgage were recorded, but the trustee had no actual knowledge of either of them.

The rulings requested by the plaintiff were directed to the question of the validity of the mortgage of personal property given by the defendant J. Ernest Gagne to the trustee. We find no error of law in the refusal of the trial judge to rule as requested.

1. It was not error to refuse to rule, in accordance with the fifth request, "That the inadequacy of consideration with the other circumstances of the defendant J. Ernest Gagne in evidence is sufficient to warrant a finding of fraud on the part of the mortgagee." We cannot say that the finding of the trial judge that this ruling was "not applicable to the facts as found" (see *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 18), was wrong. Moreover, the ruling was objectionable on the ground that it included "a finding of fact not necessarily to be inferred as matter of law from the evidence." *Bradley* v. *Meltzer,* 245 Mass. 41, 43.

The trial judge did not find that the consideration was inadequate. Nor was this fact necessarily to be inferred from the evidence or the subsidiary findings identical therewith. Fair consideration is given for an obligation — here the mortgage — when "such . . . obligation is received in good faith to secure . . . [an] antecedent debt in amount not disproportionately small as compared with the value of the . . . obligation obtained." G. L. c. 109A (St. 1924, c. 147), § 3. Here the mortgage was received by the mortgagee as security against loss from future contingent liabilities resulting from indorsements previously made. Since by statutory definition a " 'Debt' includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent" (§ 1), such liabilities were antecedent debts. They were not

"disproportionately small" in amount. In this respect *Oshry* v. *Haddad*, 265 Mass. 199, 202, is distinguishable. The mortgage, when given, was for an amount not in excess of the mortgagee's future contingent liabilities on his indorsements and, consequently, was not greater in amount than was necessary to secure fully the mortgagee against such liabilities. See *Rogers* v. *Abbott*, 128 Mass. 102, 103–104. See also *Bicknell* v. *Cleverly*, 125 Mass. 164, 165–166. It is immaterial in this aspect of the case that the mortgagor's liabilities were reduced after the mortgage was given.

Nor was it found or necessarily to be inferred that the mortgage was not "received" by the mortgagee "in good faith." Such a finding was not required by the fact that a creditor of the mortgagor was pressing him for payment of his debt (*Banca Italiana Di Sconto* v. *Bailey*, 260 Mass. 151, 159), the fact that possession of the mortgaged property with the right to "use and enjoy" it remained in the mortgagor (*Samuels* v. *Charles E. Fogg Co.* 258 Mass. 402, 407), or the fact that the mortgagee in receiving the mortgage not only "wanted to protect himself from indorsements" — for which purpose it was given by the mortgagor — but "also wanted to protect the mortgagor and carry him along so that he . . . would eventually come out all right." There was no evidence of any agreement or understanding, open or secret, between the mortgagor and the mortgagee, whereby the mortgagee was to benefit by the transaction (see *Cosmopolitan Trust Co.* v. *S. L. Agoos Tanning Co.* 245 Mass. 69, 73, and cases cited), and no evidence that any benefit resulted, or was intended to result, to the mortgagor, or that any hindrance or delay resulted, or was intended to result, to his creditors, which was not a natural consequence of placing the mortgage on the property for the protection of the mortgagee. See *Banca Italiana Di Sconto* v. *Bailey*, 260 Mass. 151, 160. Indeed, none of the findings of the trial judge was necessarily inconsistent with good faith on the part of the mortgagee.

2. For a similar reason it was not error to refuse to rule,

in accordance with the seventh and eighth requests, that if "the mortgage was given to the mortgagee for a larger amount than was really due him," he was "charged with knowledge of a fraudulent intent and . . . is a party to the fraud" or that such fact was "sufficient to put the mortgagee upon inquiry . . . and . . . equivalent to actual knowledge of such fraud" so that the mortgage was invalid. According to the findings the mortgage was not "given to the mortgagee for a larger amount" than his "unmatured" "contingent" liabilities for which the mortgagor was primarily liable and, consequently, was not given for a larger amount than was necessary to secure fully the mortgagee. See *Rogers* v. *Abbott, supra.* That the mortgage was given for a larger amount than the mortgagee's "matured" liabilities which were "absolute" or "fixed," was no indication of a fraudulent intent on the part of the mortgagor so as to make the mortgagee "a party to the fraud" or to put him upon inquiry.

3. The plaintiff's thirteenth request was refused rightly. The ruling requested was as follows: "That the facts and circumstances in this case are sufficient to infer as a matter of law, fraud on the part of the mortgagee and this mortgage is invalid." It was, in substance, a ruling that, as matter of law, the mortgage was a fraudulent conveyance. If, as could have been found, "fair consideration" was given for the mortgage and no benefit was reserved to the mortgagee, the conveyance by way of mortgage was not fraudulent on the part of the mortgagor unless it was made by him "with actual intent . . . to hinder, delay or defraud either present or future creditors," and there was no fraud on the part of the mortgagee unless he participated in a fraudulent purpose of the mortgagor. G. L. c. 109A (St. 1924, c. 147), § 7. See also §§ 4, 5, 6 and 8. *Cosmopolitan Trust Co.* v. *S. L. Agoos Tanning Co. supra. Samuels* v. *Charles E. Fogg Co.* 258 Mass. 402, 406–407. *Banca Italiana Di Sconto* v. *Bailey,* 260 Mass. 151, 159–160. *Harris* v. *Flynn,* 272 Mass. 8. The subsidiary findings did not require the conclusion that there was such actual intent on the part of the mortgagor. On the contrary there was

a specific finding that "the mortgage in question was given to save . . . [the mortgagee] from loss as an indorser upon the two notes then outstanding and any renewals thereof." It follows that, despite the desire of the mortgagee "to protect the mortgagor and carry him along," a finding that the mortgagee participated in a fraudulent purpose of the mortgagor was not required.

4. The requested rulings numbered 14 and 15, that "a mortgage reciting other consideration than the one actually given is invalid as to an attaching creditor," and, that such a mortgage "is invalid" generally, were refused rightly. Failure to recite correctly the consideration of a chattel mortgage is a circumstance to be taken in account in determining whether the mortgage is a fraudulent conveyance, but, apart from statutory provisions not here applicable (see G. L. c. 140, § 92), such failure does not necessarily invalidate the mortgage. The actual consideration may be shown by extrinsic evidence. See *Bigelow* v. *Capen*, 145 Mass. 270, 273. Indeed the statute under which this proceeding is brought provides expressly for such proof by requiring the trustee-mortgagee "to answer such questions as may be put to him . . . relative to the consideration of the mortgage." G. L. c. 223, § 79.

5. There was no error in the refusal of the judge to rule in accordance with requested rulings numbered 4, 11, 12, 16, 17 and 18. These rulings were predicated upon facts which were not specifically found or necessarily to be inferred from the evidence reported and the facts found. Therefore, we cannot say that the trial judge was wrong in stating that the rulings "were not applicable to the facts as found." They were inapplicable unless the trial judge found, respectively, a "fraudulent purpose" on the part of the mortgagor (fourth request), that the mortgagor was "financially embarrassed" and "in constant apprehension of an attachment by his creditors" (eleventh request), that the mortgagee was "acting in bad faith" (twelfth request), that the mortgage described the location of the mortgaged goods "other than by the name commonly known" (sixteenth request), that "after ac-

quired goods" were "bought to replace" the stock of goods sold in the course of business (seventeenth request), and that there was a "concealed agreement" between the parties to the mortgage (eighteenth request). None of these findings was made or required.

*Order dismissing report affirmed.*