**UNITED STATES of America**

v.

**BRUCE MACHINE COMPANY,**
Inc., et al.
Civ. A. No. 54–256.

United States District Court
D. Massachusetts.

June 24, 1955.

Anthony Julian, U. S. Atty., Francis J. DiMento, Asst. U. S. Atty., Boston, Mass., for plaintiff.

Alfred Sigel, Boston, Mass., for defendants, Harry Olins, Paul J. Goldstein and Alfred Sigel, individually and as trustees.

ALDRICH, District Judge.

On defendants' motion for summary judgment the complainant alleges that Bruce Machine Company, a dissolved Massachusetts corporation no longer subject to suit, (unless a designated state official, in his discretion, chooses to revive it. Mass. G.L.(Ter.Ed.) Ch. 155, § 56, as amended), did on April 2, 1947 execute a chattel mortgage of substantially all of its personal property, including inventories, to the defendants as trustees for certain creditors; that the mortgage was foreclosed in December, 1947, at which time certain taxes were owed to the plaintiff under the Federal Unemployment Tax Act, and on account of withholding under the Federal Insurance Contribution Act, and for employees' income taxes; Internal Revenue Code, Chapter 9, subchapters A, C, and D, 26 U.S.C. §§ 1400 et seq., 1600 et seq., 1621 et seq.; that some of these taxes were already owed on April 2nd, although not yet due, and that assessment as to some others was made before the foreclosure sale. Affidavits have been presented tending to support these allegations, and also that the company was unable to meet its obligations as they accrued, and insolvent, on April 2nd. The mortgage was similar in form to the one in United States v. Gargill, 1 Cir., 218 F.2d 556. It further appears that between the dates of May 6th and August 29th the company paid the defendants $3,500 on the mortgage note, but not pursuant to its terms, the note and mortgage having been in default from the date of the first monthly payment due thereunder. The company ceased business altogether in October.

The defendants' motion for summary judgment is bottomed upon the contention that the Gargill case establishes as matter of law that the mortgage is valid. In my opinion the facts previously men-

tioned, if established, and the inferences that might be drawn therefrom, do not necessitate the conclusion that it was valid, at least in every respect. The first question is, could it be construed in any way as an assignment for creditors subject to governmental preference within the meaning of 31 U.S.C.A. § 191, R.S. § 3466? Apart from the fact that Gargill held that § 191 would not apply in a bankruptcy case, the court there had a finding of fact by the referee that the mortgage was a valid one and not to be regarded as an assignment. In affirming, the court said, at page 560 of 218 F.2d, "The cases * * * cited by the Government * * * involved instruments labelled 'mortgages' but where the equity of redemption was a sham and where actual possession of the 'mortgaged' property of the debtor was intended to be acquired immediately after execution by the purported mortgagee who within a short time thereafter would commence to liquidate the property and transfer the proceeds thereof to the debtor's creditors. Here the mortgagor remained in actual possession of the property and carried on its business for almost one year * * *. There is nothing in this transaction which casts any substantial doubt on the possession by this mortgagor of a substantial equity of redemption."

Normally an assignment for creditors involves a transfer of possession. However, Gargill suggests, and the cases therein cited indicate, that the retention of possession may be merely nominal and a sham, and that the so-called mortgagees might be expected to have, in short order, a right to possession so incontestable as to be the equivalent of possession.

In the case at bar, on the figures shown in the government's affidavits, there was no equity, and, for all practical purposes, no possibility of redemption. The mortgagees could well have expected the right to foreclose to arise within a month, to be exercisable thereafter at will, with no likelihood of the debtor's being able to redeem. The consequences of the mortgage, in other words, being to permit the company to continue in business primarily for the benefit of the mortgagees, and, if it did not pay its taxes, at the expense of the government. I need not and do not decide on this motion whether the Gargill case can be distinguished in this respect, however, because there is another, and clearer ground.

The property foreclosed for the benefit of the defendants included, presumably, property acquired subsequent to the mortgage, by virtue of an after-acquired clause in the mortgage. The effect of this clause was not passed on in Gargill, and raises a question. Taylor v. Barton Child Co., 228 Mass. 126, 117 N.E. 43, L.R.A.1918A, 124, cf. Samuels v. Charles E. Fogg Co., 258 Mass. 402, 155 N.E. 429. I will not hold, particularly under the circumstances previously outlined, that the defendants could sweep up at the time of liquidation all assets acquired since the mortgage, free and clear of intervening taxes. The most that can be said, on a perhaps supportable theory of equitable assignment, appears in Petition of Post, 1 Cir., 17 F.2d 555, at pages 556–557,

"Under the law of Massachusetts, however, a mortgage of after-acquired property is valid, although the mortgagor retains possession, and the mortgagee, who takes possession before rights of third parties have intervened and before the filing of a petition in bankruptcy, has a valid title to such property."

On that basis, as the court stated, intervening rights must be recognized. On the basis of the affidavits submitted I will not determine on a motion for summary judgment that the defendants took possession of all after-acquired property before any such rights sufficiently matured as liens, or otherwise.

I do not now decide whether the mortgage gave the defendants even as much right in the after-acquired property as the above-quoted language suggests, or whether § 191 has some special application to whatever title the defendants may have obtained therein on foreclosure.

Secondly, I believe that taxes withheld, which under 26 U.S.C. § 3661 are "a special fund in trust for the United States", may have constituted a trust fund which may very well be traceable into the mortgagees, who may have had actual or constructive notice under the circumstances aforesaid that they were receiving such funds in breach of trust when payments were made to them on the note. In re Hercules Service Parts Corp., D.C.E.D. Mich., 101 F.Supp. 455, affirmed Hercules Service Parts Corp. v. U. S., 6 Cir., 202 F.2d 938. The defendants suggest that the taxes withheld may have constituted mere bookkeeping entries, and that there may never have been any res. If there is any validity in this point I regard it as quite inappropriate to raise at this time.

The motion for summary judgment will be denied.