## Louis D. Bianco *vs.* Ann Lay.

Hampden.   November 9, 1942. — March 31, 1943.

Present: Field, C.J., Qua, Dolan, Cox, & Ronan, JJ.

*Deed*, Acceptance. *Fraudulent Conveyance. Land Court*, Decision. *Value. Words*, "Fair equivalent."

Although there was no manual delivery to the grantee of a deed conveying the interest of a tenant in common to his cotenant and the grantee knew nothing about the conveyance before it was made, a conclusion that he had accepted it before a time more than two years after it was made was warranted where it appeared that the grantor executed the deed and handed it to an attorney for recording with a purpose to satisfy a debt owed by the grantor to the grantee, the grantee testified that he understood the conveyance had been made for that purpose, and it was admitted that the grantee had "been in possession of said . . . interest . . . since said conveyance."

A decision by a judge of the Land Court that an outright conveyance made by an insolvent person in satisfaction of an antecedent debt was not a fraudulent conveyance within G. L. (Ter. Ed.) c. 109A,

although based by the judge on the ground that fair consideration
was given by the grantee-creditor within the inapplicable definition
thereof in subdivision (b) of § 3 of the statute, should be affirmed on
appeal where the facts found showed that fair consideration was given
by him within the applicable definition thereof in subdivision (a)
of § 3.

In a writ of entry based in substance on the ground that a conveyance
by an insolvent person to the tenant of an undivided one-third in-
terest in common in a farm and a tract of pasture land was a fraudu-
lent conveyance within G. L. (Ter. Ed.) c. 109A, a conclusion was
proper that satisfaction of an antecedent debt of $3,000 owed by the
insolvent grantor to the tenant was "a fair equivalent" and "fair
consideration" for the conveyance within §§ 3 (a), 4, of the statute
although the demandant and the tenant were both of opinion that
the value of the interest so conveyed was $4,000.

In the circumstances, an agreement by the parties that the value of an
interest in property was a specified amount was to be treated as an
expression of their opinions of its value and did not preclude the
judge from considering other factors bearing on its value in deciding
whether fair consideration was given for a conveyance of the interest
within G. L. (Ter. Ed.) c. 109A, §§ 4, 3.

WRIT OF ENTRY in the Land Court dated April 3, 1940.

The case was heard by *Fenton*, J.

*I. Gelin*, for the demandant, submitted a brief.

No argument nor brief for the tenant.

DOLAN, J. This is a writ of entry to recover possession
of certain parcels of land situated in East Longmeadow.
The case was heard by the judge upon certain admitted
and agreed facts and upon other evidence. The judge
filed a decision in which he ordered that judgment be
entered for the tenant. The demandant appealed from
the decision and filed a bill of exceptions which was allowed
by the judge.

Material facts found by the judge or admitted by the
tenant follow: The demandant recovered a judgment
against William Lay, a son of the tenant, on September
30, 1932, for $6,000 and costs, and on March 10, 1939, in
an action on that judgment, obtained judgment against
him for $8,330.20 and $12.75 costs. On March 21, 1939, a
deputy sheriff, by virtue of execution issued upon that
judgment, seized whatever right, title and interest William
had in the demanded premises, and later sold them at public
auction to the demandant, who was the highest bidder. The

deed to the demandant is dated May 2, 1939, and was recorded on July 7, 1939. By deed dated October 26, 1936, William had conveyed all his right, title and interest in the demanded premises to the tenant, who has since been in possession thereof. The tenant is ninety years old. Her husband, Charles H. Lay, died intestate on August 22, 1936, leaving as his heirs the tenant and two sons, John and William, to whom the demanded premises descended. They consist of two tracts making up the farm known as the home place, and a tract of pasture land, about one half mile above the other two tracts. The son William had been in the real estate business for many years, and having lost all his money returned to the farm about "fifteen years ago." He had received some $6,000 through various advances made to him by his father on the oral understanding that he would repay the sums advanced. His father would give him orders on his savings account and William "went to the bank and received and used the money." The tenant had no bank account in her own name but from time to time from 1924 on she gave William moneys of her own totalling approximately $3,000. He paid no board during all the years he stayed at the home place. Two or three days before he died, Charles Lay (the father) had a conversation with William in the presence of the tenant. He asked William what he was going to do about what he owed, and about his interest in the place, and William said, "I'll do what is right." His father then said, "are you going to take care of your mother if anything happens to me," and William again said, "I'll do what is right." It was in pursuance of this talk and "because of the money he owed his mother [that] . . . [William] transferred his interest in the demanded premises to her" on October 26, 1936. He had no conversation with the tenant concerning that matter prior to this transfer to her and she knew nothing about it before it was made. The deed was prepared by a lawyer in his office in Springfield. The tenant was not then present. After the deed had been executed by William he gave it to the lawyer to record. The then value of William's interest in the property was agreed to be $4,000. The tenant testi-

fied that she understood that William's interest was transferred to her "to pay her for what she had given him and what his father had given him." At the time of the conveyance, William had no assets other than his interest in the demanded premises and owed approximately $4,500,000, principally on account of deficiency judgments obtained against him on notes secured by mortgages on real estate which he had owned at various times. He was hopelessly insolvent. The judge also found that there "was no evidence in the instant case of any agreement or understanding either open or secret whereby William Lay was to profit by the transaction"; that he conveyed his interest "to his mother, the tenant . . . in good faith and for a fair consideration which was an antecedent debt not disproportionately small as compared with the value of the property obtained by her"; that the tenant did not participate in any fraud, but "accepted the conveyance in good faith for an antecedent debt"; and he ruled that the interest of William in the demanded premises "was not fraudulently conveyed within the meaning of the 'Uniform Fraudulent Conveyance Law', G. L. (Ter. Ed.) Chapter 109A."

The demandant puts forward two questions as those presented for determination: "(1) Did the tenant accept the conveyance to her from William Lay before the demandant's levy? (2) Did the tenant give a fair consideration for the premises?"

With respect to these matters the demandant contends that the conclusions of the judge that the tenant accepted the conveyance and that the tenant gave fair consideration therefor are inconsistent with the subsidiary facts found by the judge. The findings of fact of the judge cannot be revised and must be accepted as true, and if upon all the facts thus disclosed and the reasonable inferences of which they are susceptible the ultimate findings are justified as matter of law they must stand. *Burke* v. *Commonwealth*, 283 Mass. 63. *Horowitz* v. *Peoples Savings Bank*, 307 Mass. 222, 224. *Franklin* v. *Metcalfe*, 307 Mass. 386, 390.

It is true, as argued by the demandant, that the recording of a deed without the knowledge or consent of the grantee

is not effective to pass title, and that the deed will not become effective until the date of its acceptance. *Harrison* v. *Phillips Academy,* 12 Mass. 455, 461. *Samson* v. *Thornton,* 3 Met. 275, 281. *Meigs* v. *Dexter,* 172 Mass. 217, 218. In the instant case there is no finding of a manual delivery of the deed to the tenant, but it is settled that "manual delivery of a recorded deed is not required to work a transfer, and that acts of the grantee when coupled with a purpose of the grantor to treat the deed as delivered are sufficient to pass the title." *Sullivan* v. *Hudgins,* 303 Mass. 442, 446, 447, 448, and cases cited. See *Gragg* v. *Learned,* 109 Mass. 167, 169. In the present case the record shows that the judge has found a purpose on the part of the grantor William to convey his interest in the premises to the tenant in payment of sums advanced to him by her, that is, in payment of an antecedent debt, and that, shortly following the death of his father, William executed the deed in question in pursuance of that purpose; that the tenant testified that she understood that he had transferred his interest in the property to her "to pay her for what she had given him and what his father had given him"; and that the tenant admitted in response to the "Demandant's Demand For Admission Of Facts," in his own words, that she "has been in possession of said right, title and interest described in said deed dated October 26, 1936, since said conveyance to her by him" (William). In the light of these facts and the reasonable inferences therefrom we think it cannot be said properly that any error of law is apparent on the record with respect to the conclusion of the judge that the tenant accepted the conveyance, and we think that they also support a conclusion that she accepted it before the levy of the demandant.

In support of his contention that the findings of the judge show error as matter of law in his conclusion that William's interest in the demanded premises was conveyed by him to the tenant for a fair consideration, which was an antecedent debt not disproportionately small as compared with the value of the property obtained by her, and in the ruling that William's interest in the demanded premises was not

fraudulently conveyed by him to the tenant within the meaning of G. L. (Ter. Ed.) c. 109A, the demandant argues that the judge improperly instructed himself as to the law, by relying on § 3 (b) of c. 109A, whereas the case in this aspect is governed by § 3 (a); and that under this section, upon the facts found, a conclusion is not justified that the conveyance was made for "fair consideration" (§ 4), that is, for a "fair equivalent" in exchange for the property. § 3 (a).

General Laws (Ter. Ed.) c. 109A (the uniform fraudulent conveyance law) § 4, provides in part as follows: "Every conveyance made . . . by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made . . . without a fair consideration." Section 3 provides as follows: "Fair consideration is given for property or obligation — (a) When in exchange for such property or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or (b) When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained."

It is apparent that the judge in making the ultimate findings complained of did employ the words of § 3 (b), and in so doing he cited as authority cases of security transactions to which § 3 (b) relates. (*Shay* v. *Gagne*, 275 Mass. 386. *Oshry* v. *Haddad*, 265 Mass. 199.) See also *Barishefsky* v. *Cohen*, 299 Mass. 360; *Mason* v. *Wylde*, 308 Mass. 268, which are likewise cases involving security transactions. Compare *McCarthy* v. *Griffin*, 299 Mass. 309, 311; *Thomas E. Hogan, Inc.* v. *Berman*, 310 Mass. 259, coming within the meaning of § 3 (a).

The subdivisions (a) and (b) relate, however, to two different classes of transactions: (a) to cases of outright conveyances or sales of property in exchange for property or obligation or in satisfaction of an antecedent debt, and (b) to cases where security is given to secure a present advance or an antecedent debt; and the measure of the considera-

tion is different in each class; thus described, in the first a "fair equivalent" being the test, in the second "an amount not disproportionately small as compared with the value of the property or obligation obtained." Doubtless the separate treatment of these two classes of transactions in the uniform fraudulent conveyance law resulted in large part from a recognition of the essential differences in character between them which made such a distinction in measuring fair consideration necessary. See *Jewett* v. *Warren*, 12 Mass. 300. In the case of the outright conveyance, a fair equivalent would be gauged, to a large degree, by the value of the property conveyed at the time of the conveyance without overmuch weight being given to a ratio of proportion or to future contingencies; whereas, in the case of a pledge or mortgage of property as security for a present advance or an antecedent debt, much more leeway would be permitted in measuring the consideration with the amount of advance or the debt. See *Jewett* v. *Warren*, 12 Mass. 300; *Halsey* v. *Winant*, 258 N. Y. 512. [1] We are of opinion that the aspect of the case under discussion is governed by the provisions of § 3 (a). But the judge's ultimate "ruling" was that the conveyance had not been made fraudulently within the meaning of G. L. (Ter. Ed.) c. 109A. That is a comprehensive finding or ruling, and even if the judge did reach this conclusion under the terms of § 3 (b), the ultimate result, if right, will not be reversed. "A correct decision will be sustained even though the ground stated for it may be unsound." *Weidman* v. *Weidman*, 274 Mass. 118, 125. *Rathgeber* v. *Kelley*, 299 Mass. 444, 446, and cases cited.

The question remains to be considered whether the subsidiary facts found by the judge support a conclusion that the tenant gave fair consideration, that is, a fair equivalent (§ 3 [a]), for the property in question.

We have not been referred to and have not discovered any decided cases in this Commonwealth where the language of § 3 (a) as distinguished from that of § 3 (b) with relation to

---

[1] See 46 Harv. Law Rev. 411, 412, and cases cited.

consideration has been interpreted. An examination of the decisions in other jurisdictions of cases arising under a similar statute or at common law seems to support the general proposition that a conveyance made in payment of an antecedent debt in good faith should not be set aside unless there is an unreasonable discrepancy between the amount of the debt and the value of the property conveyed in its satisfaction. In *Farmers' Bank of Fountain Run* v. *Hagan*, 242 Ky. 535, 541, it was held that "a conveyance in payment of bona fide antecedent indebtedness should not be set aside unless the fair and reasonable value of the property is greatly in excess of the amount of the indebtedness." In that case the court cited 27 C. J. 534 (§ 227) where it said, with citation of authorities, that such a conveyance "will be sustained if the amount of the debt is not materially less than the fair and reasonable value of the property, at least where no injury is sustained by the creditor or advantage inures to, or is secured or reserved to, the debtor, and payment of the debt is the sole consideration." In *First National Bank of Flora* v. *Cunningham*, 267 Ill. App. 430, 433, 434, what may be called the "not materially less" rule was followed. In *Halsey* v. *Winant*, 258 N. Y. 512, 523, the court did not commit itself further than to say that "What is fair consideration must, of course, be determined upon the facts and circumstances of each particular case."

In *Schlecht* v. *Schlecht*, 168 Minn. 168, 172, it was held that "A fair consideration is one which fairly represents the value of the property transferred." In that case an insolvent debtor, having a claim for a fire loss, assigned one fifth of what he might recover thereon to one Rich for $500. The one-fifth portion of the amount recovered was $4,304.23, and the court held that under the uniform fraudulent conveyance act "A fair consideration is one which fairly represents the value of the property transferred. In the light of subsequent events Rich made a good bargain, but it must be remembered that when it was made the outcome of the fire cases was uncertain."

In *Third National Bank of Mt. Vernon* v. *Norris*, 331 Ill. 230, 238, a parcel of land, the value of which was variously

estimated at from $9,600 to $17,600 (three hundred twenty acres at $30–$55) was conveyed in satisfaction of an antecedent debt of $10,000. In holding that this was fair consideration, the court said that "The amount at which they [the creditors] took the land was a reasonably adequate value for it"; that land was not selling freely; that opinions as to its value differed, but that it was "no evidence of fraud that in accepting the land for the debt they were unwilling to take it at the highest value . . ." of which there was evidence.

In *Utah Assets Corp.* v. *Dooley Bros. Association*, 92 Utah, 577, 584, construing the words "fair equivalent" used in a statute identical in terms with G. L. (Ter. Ed.) c. 109A, § 3 (a), the court, in reply to a contention that those words mean exact value, said: "No authorities are cited except Webster's definition of 'equivalent' as 'equal in worth or value.' The statute does not say an 'exact equivalent' but a 'fair one.' The use of the phrase 'fair equivalent' instead of the 'exact equivalent,' or such expressions as 'equal in value,' suggests that the Legislature meant something other than 'full value.' The qualifying term here is 'fair' and implies some modification of the term 'equivalent.'" In that case the debt was $10,000, and the trial judge found that the value of the property conveyed did not exceed $14,000 to $15,000, and that the defendant had paid fair consideration for the property. The judgment was affirmed. See *Farmers Exchange Bank* v. *Oneida Manuf. Co.* 202 Wis. 266; *Drury* v. *State Capital Bank*, 163 Md. 84; *Wagoner* v. *Wallace Turnbull Corp.* 306 Penn. St. 442.

In most instances where the consideration was held not to be a fair equivalent for the property and the transaction consequently was held void, the difference between the value of the property and the amount of the debt appears to have been substantial, as in *Douglass Cotton Oil Co.* v. *Alabama Machinery & Supply Co.* 205 Ala. 51, *Wilmer* v. *Placide*, 131 Md. 399, *Stevens* v. *Cobern*, 109 Texas, 574, and *Elmore Milling Co. Inc.* v. *Carkees*, 255 App. Div. (N. Y.) 410. See *Buhl* v. *McDowell*, 51 S. D. 603.

We are of opinion that by "as a fair equivalent" as pre-

scribed in § 3 (a) it is not meant that the adequacy of the consideration is to be determined by weighing "the value of the goods sold and the price received in very precise scales . . . ," 24 Am. Jurisprudence § 22, and cases cited, nor by any ratio of proportion.

In the instant case the amount of the debt is found to be $3,000. In his decision the judge states that it "was agreed that the value of William's interest in the property at the time of the transfer was" $4,000. There is no express finding as to the basis upon which that agreement was reached. We think that it is a fair inference that it was based upon the opinion of the parties. Tested thus alone, the difference between the debt and the agreed value of the property conveyed is not inconsiderable. But the extent of the interest of William in the property involved and the character of the property itself were found by the judge. The interest of William was an undivided third interest in the property. He was a tenant in common with his mother and brother. The property consisted of two tracts of farm land of about forty-four acres and seven acres respectively, the "home place," and of fifty acres of pasture land a half mile therefrom. Notwithstanding that the value of William's interest therein when he made the conveyance in question was agreed upon, we think that the judge would be justified in taking into consideration also the circumstances to which we have just referred, that he could properly take cognizance of the limited market for such undivided interests in land, the rights of cotenants to convey their particular interests to another or others and to force sales or divisions in partition proceedings, and the consequent possibility of not realizing the values placed upon them by the owners. As was said in *Drury* v. *State Capital Bank*, 163 Md. 84, 94, "the value of an undivided interest in land is not fractionally comparable to the value of an estate in severalty; and therefore the fair market value of an undivided interest cannot be said to be the corresponding aliquot portion of the fair market value of the whole tract. Thus the fair market value of an undivided one-half interest in a parcel of land whose value is $7,000 is not

ascertainable by simply halving this sum." In that case the court referred to the figure of $3,500 found by the trial judge to be the fair value of an undivided half interest as "clearly excessive."

In the instant case we think that the judge could properly treat the agreement of the parties as to value as expressions of their opinions, and that, in the light of all the facts found by the judge, and particularly of those with relation to the extent of the interest owned and conveyed by William, and of the character of the property as a whole, it cannot be said as matter of law that a fair equivalent was not given by the tenant for the property obtained from William in satisfaction of his antecedent debt to her. There was, therefore, no error of law in the ultimate conclusion of the judge that the property in question had not been fraudulently conveyed, in violation of the provisions of G. L. (Ter. Ed.) c. 109A.

*Exceptions dismissed.*
*Decision affirmed.*