Boston Consolidated Gas Company *vs.* Department of Public Utilities.

Suffolk. April 7, 1952. — June 12, 1952.

Present: Qua, C.J., Lummus, Ronan, & Spalding, JJ.

*Gas Company. Public Utilities. Equity Pleading and Practice*, Proceedings after rescript; Master: recommittal, report of evidence, exceptions to report; Decree; Appeal.

An appeal in a suit in equity from an interlocutory decree after rescript which conforms exactly to the rescript must be dismissed. [127]

Recommittal of a suit in equity to a master in accordance with a rescript of this court for the purpose of making findings concerning certain specified matters did not reopen the whole case; only the specified matters were open before the master. [127]

A master not ordered to report evidence should not do so except so far as necessary to enable the court to determine the propriety of his

rulings on points of evidence and procedure raised during the hearing before him.   [128]

Exceptions to a master's report on questions of evidence could not be considered by this court on an appeal by the excepting party from the final decree only, without any appeal by him from an interlocutory decree overruling the exceptions and confirming the report, where the final decree was not erroneously affected by the master's rulings on such questions.   [128]

An order of the department of public utilities disallowing a schedule of rates filed by a gas company and permitting only lower rates must be annulled on review under G. L. (Ter. Ed.) c. 25, § 5, where it appeared that, even after elimination of certain items improperly included in the operating expenses of the company, the earnings available for interest and dividends on the basis of the permitted rates would be below the line of confiscation.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on November 10, 1948.

Following the decision by this court reported in 327 Mass. 103, an interlocutory decree after rescript was entered by order of *Wilkins,* J., and certain further interlocutory decrees and a final decree were entered by order of *Williams,* J.

*David H. Stuart,* Assistant Attorney General, for the defendant.

*Robert H. Holt,* (*Joseph P. Rooney & Arthur P. Schmidt* with him,) for the plaintiff.

QUA, C.J.  This is a bill in equity under G. L. (Ter. Ed.) c. 25, § 5, for the annulment as confiscatory of an order of the department entered September 28, 1948, disallowing a schedule of rates for gas which had been filed by the company, and permitting it to file new and lower rates.

When the case was here before (*Boston Consolidated Gas Co.* v. *Department of Public Utilities,* 327 Mass. 103), it appeared from the master's first report that, in order that the company might operate successfully, maintain its financial integrity, attract capital, and compensate its investors properly for the risks involved, it must earn for interest and dividends not less than 6.25% on a rate base of $45,000,000; but that the rates proposed by the company itself would fall far short of producing such earnings and

would produce on an annual basis only about $400,000 more than the rates permitted by the department. 327 Mass. at page 111. Why the company did not seek a larger return has never, so far as we know, been explained in this litigation and is immaterial now. Good reasons may have existed. It further appeared from the first report that the company operated a business of selling gas appliances and charged to its business of selling gas certain expenses for salesmen, clerk hire and advertising which in our opinion ought to have been charged to the appliance business and ought not to have been included in the expenses of selling gas. 327 Mass. at pages 108–112. We took the view that, although the rates asked for by the company would produce far less than it required, it could not complain of confiscation if the rates permitted to it would, after correction of the improper charges, produce as great a return as would the rates filed by it. Since from the facts then before us we could not tell that correction of the improper charges would not result in wiping out the difference of $400,000 and showing a return from the gas business as great as that of the rates filed, we ordered that the department's thirty-fifth exception to the master's first report, the only exception directed against the improper charges, be sustained and that the cause be recommitted to the master to report the amount of expenses for salesmen, clerk hire, and advertising properly allocable to the gas business and to the appliance business. These were the only expenses which appeared from that part of the master's first report to which the department's thirty-fifth exception referred to have been wrongly charged to the gas business. We also ordered that the master be directed to report "whether any significant portion of the company's invested capital has been withdrawn from the service of the public in the gas business for purposes of the appliance business, and if so, how much . . . ." 327 Mass. at page 113. The purpose of this last order was to ascertain whether the separation in the accounting between the gas business and the appliance business would involve any changes in the

rate base of sufficient consequence to be considered. Except as affected by the sustaining of the department's thirty-fifth exception, we directed that the master's first report, together with a second or "supplementary" report dealing with a minor matter not now important, be confirmed.

Upon the filing of the rescript of the full court, the single justice entered an interlocutory decree after rescript, from which the department filed an appeal. Since the decree was in exact accord with the rescript, this appeal must be dismissed. *Carilli* v. *Hersey*, 303 Mass. 82, 85.

The recommittal to the master for the specific purposes hereinbefore enumerated did not reopen the whole case. It gave the department no right to reargue matters decided when the case was here before. No case could be ended if each new step in the course of the proceeding were to be treated as a new beginning of the whole case. The duties of the master and the rights of the parties on recommittal were strictly limited by the terms of the interlocutory decree recommitting the cause. It is obvious from the master's third report that he understood the nature of his duties under the decree of recommittal and has performed them according to the decree.

Upon the coming in of the master's third report the single justice entered an interlocutory decree overruling the exceptions of both parties to that report and confirming the report, and a final decree annulling the order of the department of September 28, 1948. The department appeals from the final decree only. The company appeals from the interlocutory and final decrees, and also from an interlocutory decree denying its motion to strike a portion of the master's report.

The department filed twenty-five objections to the master's third report. Upon the filing of the report these objections automatically became exceptions. Equity Rule 26 (252 Mass. 608). Many of them do not briefly and clearly specify the matters objected to and the cause thereof as required by the rule. Others complain of the refusal of the master to go beyond the scope of the recommittal. Still others are based upon evidence not reported by the master.

The decree of recommittal did not require the master to report evidence, and it was not his duty to do so, except in so far as might be necessary to enable the court to judge of the correctness of his rulings upon points of evidence and procedure raised during the course of the hearing before him. *Cook* v. *Scheffreen,* 215 Mass. 444. *Smith* v. *Lloyd,* 224 Mass. 173. *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, 406. The master does refer to a so called "Appendix" annexed to the department's objections containing a transcript of "a substantial portion" of the evidence, which, however, is "to a substantial extent fragmentary and incomplete." The master declined to report this "transcript," but did seek to report his rulings on evidence as set forth in the "transcript." The "transcript" was not reported generally, and if it had been it could not be considered for the purpose of giving life to the department's exceptions, since the master was not authorized to report the evidence, much less fragments of the evidence presented to him by one side in the litigation. *Lindsay* v. *Swift,* 230 Mass. 407, 409. *Joyner* v. *Lenox Savings Bank,* 322 Mass. 46, 57–58, and cases cited. The "transcript," even if we assume that it was proper for the master to use it as a vehicle for reporting his rulings on evidence, cannot be considered in connection with the department's exceptions on questions of evidence, because the department did not appeal from the interlocutory decree confirming the master's third report. That decree is therefore open to revision on the appeal from the final decree "so far only as it appears to the full court" that the final decree was "erroneously affected thereby." G. L. (Ter. Ed.) c. 214, § 27. It does not appear that the final decree was erroneously affected by any rulings of the master on questions of evidence. *Fay* v. *Corbett,* 233 Mass. 403, 409–410. *Canning's Case,* 283 Mass. 196, 199. *Arey* v. *George Associates, Inc.* 299 Mass. 130, 132. *Regan* v. *Tierney,* 306 Mass. 168. It could also be said of others of the objections that the action of the master complained of does not appear to have erroneously affected the final decree. It does not seem to us that any of the findings

of the master were based upon guesswork or conjecture or were arbitrary, as alleged in some of the objections. He seems to have weighed the evidence with care. Some of the questions submitted to him on recommittal were not susceptible of mathematically exact answers. Certainly in the absence of a full and complete report of the evidence we cannot say that the findings were not supported. Further discussion of the department's exceptions to the master's report would serve no useful purpose. We have examined them all with care and discover nothing that vitiates the master's findings.

The facts shown in the master's third report do not help the department. The allocation of expenses between the gas business and the appliance business results in adding at most only $75,531 to the revenue of the gas business available for interest and dividends. Only $50,000 of the company's invested capital has been withdrawn from the service of the public in the gas business for purposes of the appliance business. This sum can have no significant effect upon a rate base of $45,000,000. The earnings under the department's order are still less than they would have been under the rates filed by the company by, roughly, not less than $325,000, and amount to approximately 1.28% on a rate base of $45,000,000. This is confiscatory. There would still be confiscation if the rate base were taken at any lesser figure which on any theory could possibly be warranted by any facts found by the master. The company had a right to try to increase its earnings at least to the extent that would be brought about by the rates which it filed.

The department's appeal from the interlocutory decree after rescript is dismissed. The company's appeals have become of no importance and are deemed to be waived. The interlocutory decree denying the company's motion to strike a portion of the master's report is affirmed. The interlocutory decree overruling the exceptions of both parties to the master's third report and confirming the report is affirmed. The final decree is affirmed.

*So ordered.*