291 Washington St. Inc. *vs.* School St. Liquors, Inc. & another.

Suffolk.    November 4, 1953. — March 1, 1954.

Present: Qua, C.J., Wilkins, Spalding, Williams, & Counihan, JJ.

*Fraudulent Conveyance. Equity Pleading and Practice,* Findings by judge.

Oral statements made by the judge at the conclusion of the hearing of a suit in equity were not findings of fact and could not be considered on appeal from the final decree.    [150–151]

An implied finding, not plainly wrong on the evidence in a suit in equity, that there was fair consideration for a transfer of a license and a lease by an insolvent corporation to a second corporation in exchange for an agreement by the transferee to settle the claims of certain creditors of the transferor, which the transferee did settle, precluded a conclusion that the transaction was fraudulent in law within the uniform fraudulent conveyance law, G. L. (Ter. Ed.) c. 109A.    [153]

Bill in equity, filed in the Superior Court on June 7, 1951.

The suit was heard by *O'Connell,* J.

*Maurice Palais, (Samuel Miller* with him,) for the plaintiff.

*Benjamin Goldman, (Benjamin Gargill* with him,) for the defendant Eton Liquors, Inc.

Wilkins, J.    The plaintiff, which has appealed from a final decree dismissing the bill, brings suit to reach and apply property allegedly conveyed by the defendant School St. Liquors, Inc. (hereinafter called School Street) to the defendant Eton Liquors, Inc. (hereinafter called Eton), with intent to defeat, delay, or defraud creditors.   G. L. (Ter. Ed.) c. 214, § 3 (9).   The evidence is reported, but there is no report by the trial judge of the material facts found by him.   His oral statements made at the conclusion of the

hearing were not findings of fact, and cannot be considered. *Grandell* v. *Short*, 317 Mass. 605, 608. See *Hayes* v. *Penn Mutual Life Ins. Co.* 222 Mass. 382, 385; *Rappel* v. *Italian Catholic Cemetery Association*, 259 Mass. 550, 553. The entry of the final decree imports all findings necessary to support it, including, in this instance, a finding that no property was transferred by School Street to Eton with fraudulent intent. Our duty is to examine the evidence and reach our own conclusions on questions of fact and of law, but not to reverse findings of the trial judge unless we are satisfied that they are plainly wrong. *Warner* v. *Selectmen of Amherst*, 326 Mass. 435, 436.

School Street conducted a bottled liquor store at 2 School Street, Boston, in premises owned by the plaintiff. On March 9, 1951, the plaintiff obtained judgment for $2,125.20 against School Street in the Municipal Court of the City of Boston in an action for rent under a written lease. This judgment, covering the months of February, March, and April, 1950, is wholly unsatisfied. School Street's payments under the lease had been guaranteed by Frank Gould, its president, treasurer, and manager. The plaintiff sued Gould on the guaranty, recovered judgment, and on May 10, 1951, examined him in the poor debtor court. Gould died later that month.

The judge was not plainly wrong in failing to find fraud in fact. See G. L. (Ter. Ed.) c. 109A, § 7. Evidence as to Gould's testimony in the poor debtor court, which, it is argued, might have permitted such a finding, was not binding on either defendant, and the judge did not have to accept it. In the case at bar there are no findings of actual fraudulent intent as in *Perkins* v. *Becker's Conservatories, Inc.* 318 Mass. 407, 411. See also *Manufacturers National Bank* v. *Simon Manuf. Co.* 233 Mass. 85, 89–90; *R. E. McDonald Co.* v. *Finkovitch*, 270 Mass. 362, 366.

There remains the question whether the transaction was fraudulent as matter of law. The uniform fraudulent conveyance law, G. L. (Ter. Ed.) c. 109A, provides: "Every conveyance made . . . by a person who is or will be thereby

rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made . . . without a fair consideration." § 4. "Fair consideration is given for property . . . (a) When in exchange for such property . . . as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied . . . ." § 3. In the case at bar there was evidence that Gould testified in the poor debtor court that the value of the liquor license was "certainly $10,000," but that he would not sell it for that. There was no evidence from any source of a higher value.

Facts which could have been found include these. School Street was insolvent in May, 1949, and a creditors' committee was formed. At that time the plaintiff was not a creditor. School Street ceased to occupy the plaintiff's store at the end of April, 1950. It later acquired a lease of premises in Brighton. Eton was formed on August 10, 1950, and acquired the liquor license and an assignment of the new lease in exchange for an agreement to pay sums owed by School Street to the American Guaranty Corporation and to all the merchandise creditors of School Street. Eton paid American Guaranty Corporation $15,000 and disbursed between $10,000 and $11,000 in settling the claims of thirty to thirty-five merchandise creditors whose total claims aggregated about $40,000. No merchandise or other property of School Street was turned over to Eton. The transfer of the liquor license was approved by the Boston licensing board after advertising in a Boston newspaper. The officers of Eton were Herbert Gould (son of Frank) president, and Anna Gould (wife of Frank) treasurer and clerk. They and one Rapisardo were the directors. Frank Gould was neither a director nor an officer. He was named as manager "for the purpose of the liquor license," but the real manager was one Rosen. Frank worked in New York and did very little at Eton's store. He did, however, receive $80 weekly salary because Anna took none. The capital to finance Eton and to discharge School Street's indebtedness came from Anna's sister, who received as security Anna's

capital stock in Eton and a mortgage on Eton's personal property. There was no evidence of common stock ownership of School Street and Eton. It could not have been found that the formation of Eton was a sham. *Marsch* v. *Southern New England Railroad,* 230 Mass. 483, 497–498. *New England Theatres, Inc.* v. *Olympia Theatres, Inc.* 287 Mass. 485, 493. *Galdi* v. *Caribbean Sugar Co.* 327 Mass. 402, 407–408.

The implied finding, which was not plainly wrong, that the transfer of the license and the assignment of the lease were given for fair consideration (*Barishefsky* v. *Cohen,* 299 Mass. 360, 362; *Bianco* v. *Lay,* 313 Mass. 444, 449, 452–453; *Davis* v. *Best Built Homes, Inc.* 329 Mass. 632, 633–634), precludes a conclusion that the transaction was fraudulent in law. No secret agreement for the benefit of School Street is apparent. The findings present a preference and not a fraudulent conveyance. The case falls within the authority of numerous decisions. *Banfield* v. *Whipple,* 14 Allen, 13, 14–15. *Giddings* v. *Sears,* 115 Mass. 505, 507–508. *Lyon* v. *Wallace,* 221 Mass. 351, 353. *Cosmopolitan Trust Co.* v. *S. L. Agoos Tanning Co.* 245 Mass. 69, 73. *Samuels* v. *Charles E. Fogg Co.* 258 Mass. 402, 406–407. *Banca Italiana Di Sconto* v. *Bailey,* 260 Mass. 151, 159–160. *Baker* v. *Chisholm,* 268 Mass. 1, 3–4. *Shay* v. *Gagne,* 275 Mass. 386, 392. *Mason* v. *Wylde,* 308 Mass. 268, 283. See *Boston Marine Ins. Co.* v. *Proctor,* 168 Mass. 498.

*Decree affirmed.*