ROBERT R. SYKES *vs.* ELMER J. SMITH & others.

Franklin.    September 20, 1955. — February 7, 1956.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Fraudulent Conveyance.    Contract,* Implied.    *Parent and Child.*

Circumstances may give rise to an implied contract between a parent and
  his child living in his household whereby he is to pay the child for
  services rendered.  [564–565]
In a suit in equity by a creditor of a farmer to set aside a conveyance of
  his farm by him to his two sons on the ground that the conveyance
  was fraudulent under G. L. (Ter. Ed.) c. 109A, a decree dismissing
  the bill was required by findings that the conveyance was made in
  satisfaction of the father's indebtedness to the sons for money lent
  and for wages earned by them while working for him both before
  and after they attained majority, that the sons were not parties to any
  scheme to defraud the plaintiff and were acting to protect their own
  interests, and that the conveyance was for adequate consideration.
  [565]

BILL IN EQUITY, filed in the Superior Court with a writ
of summons and attachment dated February 19, 1951.

The suit was heard by *Hudson,* J., on a master's report.

*Paul A. Trudel,* for the plaintiff.

No argument nor brief for the defendants.

RONAN, J.    This is an appeal from a final decree dismiss-
ing a bill brought by the plaintiff against Elmer J. Smith,
hereinafter called Smith, and his wife, Lucy J. Smith, to-
gether with their sons, Richard R. Smith and Paul E. Smith,
to set aside a conveyance of real estate, located in Rowe, by
the defendant parents to their two sons which the plaintiff
alleges was made with intent to defeat, delay, and defraud
him, a creditor of Elmer J. Smith, and was without fair con-
sideration and in violation of G. L. (Ter. Ed.) c. 109A.

The report of the master has been confirmed and fully
sets forth the history of the controversy.

The plaintiff was engaged in the purchase and sale of real

estate and personal property in his own behalf and as agent of others. At times, he undertook the financing of logging operations and the sales of property by deeds, mortgages, and instalment contracts. He also conducted a store where according to the master he dealt in "all manner of items from automobiles to underwear." The plaintiff was a trader. Smith was a farmer. Smith in 1941 purchased from the plaintiff by means of an instalment contract a farm in West Deerfield. He acquired the deed to this farm in 1944 subject to a bank mortgage. In September, 1946, the plaintiff arranged for the sale of the West Deerfield property and the acquisition by Smith of a farm in Rowe. The equity in the West Deerfield farm was sold for $3,000 and the purchase price of the Rowe farm was $3,600. Smith secured a bank mortgage of $2,000 which he contemplated would enable him, with the proceeds of the West Deerfield property, to finance the purchase of the Rowe farm and would leave him with a $1,300 balance. Instead, he received only $916. The plaintiff charged him an unauthorized commission of $100. Smith never knew the financial details of the two transactions. Smith and his family occupied the Rowe premises soon after their purchase. In the latter part of 1947 or early in 1948 the plaintiff suggested to Smith that he should purchase a larger farm located in Colrain and owned by the plaintiff. The plaintiff showed the farm to Smith who desired a larger farm for his family. Sometime prior to April 1, 1948, the plaintiff informed Smith that the manager of the Colrain farm had left and the cattle needed immediate attention, and asked Smith how long it would take to have him and his two sons take possession. Smith and the two sons arrived that day and the rest of the family within a week. Smith with his family continued to operate the Colrain farm until they returned to the Rowe farm on or about March 1, 1951.

Smith executed an agreement to purchase the Colrain farm for $12,000 but he was not to receive any deed until he had paid $6,000, which was to be paid in instalments to

be derived from the operation of this farm. A deed then was to be given secured by a mortgage. The plaintiff in order to prevent a foreclosure of the mortgage on the Rowe property paid in July, 1948, $2,000 for a discharge of this mortgage. His requests to Smith for a deed of these Rowe premises were not complied with as the defendant Mrs. Smith refused to join in a deed. The plaintiff also paid $836.02 as a satisfaction of a note of Smith on which the plaintiff was an accommodation party. The master set forth the bookkeeping methods of the plaintiff and his claims for several thousand dollars, and finally concluded that he was unable to find that the plaintiff was owed more than $2,836.02.

Smith's attorney had notified the plaintiff by letter dated February 13, 1951, that Smith would vacate the Colrain property on March 1, 1951, and that in all probability it would be necessary in the near future to put Smith into bankruptcy.

Smith's two sons worked with their father on the three farms mentioned. On the termination on June 27, 1947, of Richard's term in the army, he returned to Rowe and continued to work for his father until March 23, 1950, when he left the family home and went to Greenfield and became an employee of the railroad. Richard attained his twenty-first birthday on December 15, 1948. The other defendant son, Paul, became of age on December 30, 1949. He returned to Rowe with his father when the family left Colrain about March 1, 1951. Both sons prior to September, 1946, had worked on various farms and had given their wages to their father after deducting approximately $5 each for their personal needs. The father, however, never paid them any wages. Each son expected to be paid when his father was able. Smith believed that he owed them several thousand dollars. In addition to turning over their wages to the above extent, the two sons lent Smith a little over $1,000. The items making up these loans and their sources are detailed in the master's report. The plaintiff subsequent to April 1, 1948, in reply to a question of Smith, ad-

Sykes *v.* Smith.

vised him that the latter should pay his two sons for their work. Nothing, however, was done in this respect.

Smith had been sued on a grain bill. In February, 1951, the two sons met with their father in reference to this law suit and his other financial troubles. They knew their father owed money to the plaintiff but they did not know the amount. It was then agreed that the defendant Paul should settle the grain bill and that Smith would deed the Rowe farm to Paul and Richard in satisfaction of his indebtedness to them. The master found that the sons were not parties to any schemes to defraud the plaintiff and were acting to protect their own interests, and that at the time of this conference they were creditors for money lent and for several thousand dollars for unpaid wages. He found that the conveyance, which was made on February 12, 1951, was for adequate consideration "and that the most that can be said against it is that it was a preference."

The plaintiff took three exceptions to the master's report, but did not appeal from the interlocutory decree confirming the report. *Boston Consolidated Gas Co.* v. *Department of Public Utilities*, 329 Mass. 124, 128. *New England Investment Corp.* v. *Sandler*, 329 Mass. 230, 236. He excepted to a statement in the report, that "from sometime in 1944 to January of 1951 . . . the Smith family were reduced to virtual peonage," on the ground that it was a ruling of law unsupported by any of the evidence contained in the report. This was not a ruling of law but a finding of fact. The master was not required to report the evidence. It is to be noted that the objection is not that this finding is not supported by the evidence heard by the master. The second and third exceptions were to the findings that the sons were creditors of their father and that the conveyance to them on February 12, 1951, was for adequate consideration, respectively, on the ground that they were "inconsistent with the evidence and such of the subsidiary facts as are set forth in the report." These ultimate findings of the master did not purport to rest upon his subsidiary findings. None of these exceptions raised the point that the evidence

heard by the master was insufficient to support them. Furthermore, the exceptions are not directed to any errors appearing upon the face of the report. *Anderson* v. *Connolly,* 310 Mass. 5. *Leventhal* v. *Jennings,* 311 Mass. 622. If the plaintiff intended to raise the point that the evidence was insufficient to support these findings there was still no error in overruling these exceptions because the testimony was not taken by a stenographer approved or selected by the master. *Russo* v. *Thompson,* 294 Mass. 44, 46–47. *Bouchard* v. *Bouchard,* 313 Mass. 531, 534. Neither was there any error in the denial of the motion to recommit the report. *George C. Miller & Co. Inc.* v. *Beagen,* 293 Mass. 54, 57. *Patterson* v. *Simonds,* 324 Mass. 344, 351.

It is open to the plaintiff to argue, and he does argue, that on the facts found by the master he is entitled to prevail. There is a presumption that the services rendered by a minor child to his father while comprising a part of his household are performed gratuitously and that when services are rendered to a third person the father is entitled to the wages. On the other hand the father is under an obligation, so far as he is able, to furnish the child with the necessities of life. The presumption is only a rebuttable one and this noncommercial relation may change before the child attains majority. The situation may continue after the child has reached his majority if both, the parent and the child, are content to go along in the same manner they had previously done, one aiding the other by services for the advantages enjoyed in living in his father's household. It might, however, be difficult to prove that one in good health who has reached manhood would be willing to work indefinitely for a parent in the absence of any emergency for no greater reward. The previously existing relation of parent and child may take on also a contractual aspect. The contract need not be expressed but may be implied. It may arise out of the circumstances. If the one rendering the services to his parent expected to be paid for them and the parent accepting the benefits understood or ought as a reasonable man to have understood that payment was ex-

pected, then an implied contract may be found to exist between them. *Spencer* v. *Spencer,* 181 Mass. 471. *Butler* v. *Butler,* 225 Mass. 22. *Sherry* v. *Littlefield,* 232 Mass. 220. *French* v. *Bray,* 263 Mass. 121. *Tower* v. *Jenney,* 279 Mass. 208. *Macomber* v. *King,* 288 Mass. 381.

The findings of the master are not mutually inconsistent, contradictory, or plainly wrong. They are binding upon us. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330. *LaChance* v. *Rigoli,* 325 Mass. 425. *Broderick* v. *Broderick,* 325 Mass. 579.

It is plain upon the master's findings that the two sons furnished in good faith a fair equivalent for the conveyance of the Rowe farm for in addition to the money lent they were owed several thousand dollars for wages. There was no violation of G. L. (Ter. Ed.) c. 109A. *Bianco* v. *Lay,* 313 Mass. 444. *291 Washington St. Inc.* v. *School St. Liquors, Inc.* 331 Mass. 150.

*Decree affirmed with costs*
*of the appeal.*