ELLA SPLAINE vs. ELLEN MORRISSEY & another.

Suffolk.　November 23, 1932. — February 23, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Equity Jurisdiction*, Fraudulent conveyance. *Gift. Insolvency. Husband and Wife. Tenancy by the Entirety. Joint Tenancy.*

Joint ownership of real or personal property with right of survivorship created by a transfer to husband and wife is presumably a tenancy by entirety, although an ordinary joint tenancy or some other form of joint ownership by them can be created if the intention to do so clearly appears. Per FIELD, J.

The plaintiff in a suit in equity against a widow both in her individual capacity and as administratrix of her husband's estate sought establishment of a debt owed to the plaintiff by the intestate and to reach and apply in payment thereof a certain bank deposit alleged to have been transferred fraudulently to the defendant as an individual. A judge who heard the suit found that a debt of $1,620 was owed by the decedent to the plaintiff at the time of the transfer; that, five days after his marriage to the defendant, bank deposits amounting to $3,971 were transferred by the decedent from his name "to the joint name of himself and his wife with the right of survivorship"; that at that time the decedent had no other property except his clothing; "that this transfer was made without consideration and was a gift to his wife; that the gift was not made with any intent to hinder, delay or defraud creditors and that this transfer did not make" the decedent "insolvent"; that at that time the decedent was in good health; and that he died about three and one half months after the transfer. There was no other specific finding as to the transaction at the bank or as to the precise terms of the contract of deposit. By order of the judge, a final decree was entered adjudging the existence of the debt owed by the administratrix and dismissing the bill as to the defendant as an individual. The plaintiff appealed, contending that the finding by the judge, that the transfer did not make the decedent insolvent, was an erroneous conclusion. *Held*, that

(1) The findings by the judge meant that the decedent made a present gift to his wife, not of the deposits themselves but of such interests therein as were implied from the terms of deposit upon which they were held by the banks;

(2) The language of the contracts of deposit, as described in the findings, was apt for the creation of a tenancy by the entirety, and nothing in the findings as a matter of law required a conclusion that the parties did not intend to create such a tenancy;

(3) If a tenancy by the entirety was created by the transfer of the bank deposits, the interest of the decedent in each deposit was the

entire income thereof during his life with the possibility of absolute title thereto if he should survive his wife;

(4) In the circumstances, a finding, that the value of such interest was not less than the amount of his indebtedness, would not have been plainly wrong;

(5) If an ordinary joint tenancy was created by the transfer of the bank deposits, then the decedent at any time during the joint lives of himself and his wife could have severed the tenancy and withdrawn his share of each deposit; and a finding, that the value of such right was not less than his indebtedness, would have been warranted;

(6) If such transfer created a joint ownership in the deposits, with a right in either the decedent or his wife during their joint lives to withdraw the whole or any part thereof, the right to withdraw during his life was attachable by his creditors and, no withdrawal being shown, the creditors were not hindered;

(7) The interest of the decedent in the circumstances could have been reached in payment of his debts; and a conclusion was not required as a matter of law that, upon the transfer of the bank accounts as made, the decedent was rendered insolvent because left with property less in value than the amount of his debts;

(8) The bill properly was dismissed against the defendant as an individual.

BILL IN EQUITY, filed in the Superior Court on September 14, 1931, and described in the opinion.

The suit was heard by *Whiting,* J. The evidence was not made a part of the record. The judge found the following facts: "I find that the plaintiff Ella Splaine had a mother, a brother named Michael and several sisters. In 1907 the plaintiff paid the expenses of Michael in coming from Ireland; that thereafter Michael, who was unmarried, lived with his mother until 1924. In 1924 his mother had a shock and was not thereafter able to take care of the house. The other children had large families and were unable to take care of their mother. The plaintiff was then living with her husband and family and did a dressmaking business. Michael came to her and induced her to give up her dressmaking business, to take a larger tenement and to take him and his mother to board. He agreed to pay the plaintiff $10 per week for his room and board and $10 a week for the room, board and care of his mother. Michael and his mother thereupon came to live with the plaintiff and Michael made the payments above mentioned for about two months. He was then injured, was

out of work for a long time and on November 27, 1924, ceased to make the payments for his mother's board. He and his mother continued to live with the plaintiff until his mother's death on June 6, 1928, paying his own board out of moneys received under the workmen's compensation act and afterwards from his pay, but not paying the $10 per week for the room, board and care of his mother, although he promised from time to time to do so. After the decease of his mother Michael left the plaintiff's house and lived in several rooming houses until June 30, 1929, when he married the respondent Ellen Morrissey. On July 5, 1929, he went with his wife Ellen Morrissey to the Boston Five Cents Savings Bank and there transferred a deposit in that institution of the value of $3,000.37 from his name to the joint name of himself and his wife with the right of survivorship, and also transferred an account in the Federal National Bank of the value of $971.31 from his name to the joint name of himself and his wife with the right of survivorship. At this time he had no other property except his clothing.

"I find that this transfer was made without consideration and was a gift to his wife; that the gift was not made with any intent to hinder, delay or defraud creditors and that this transfer did not make Michael insolvent. He was then in good health but died on October 23, 1929, as a result of a strangulated hernia.

"I find that the amount due and unpaid the plaintiff by Michael for the room, board and care of his mother amounts to $1,620."

By order of the judge, a final decree was entered, adjudging that the defendant as administratrix owed the plaintiff $1,620, and dismissing the bill as to the defendant individually. The plaintiff appealed.

*J. A. Daly,* for the plaintiff.

*P. K. Connolly,* for the defendants.

FIELD, J. This bill in equity was brought against Ellen Morrissey as the administratrix of the estate of her deceased husband, Michael Morrissey, and also against her in her individual capacity to determine the amount due to the plaintiff from her as administratrix, to adjudge fraudulent

a conveyance by the deceased to her individually of certain bank deposits, and to order her as an individual to pay the plaintiff's claim out of said deposits or the proceeds thereof. A decree was entered adjudging that Ellen Morrissey as administratrix of her husband's estate is indebted to the plaintiff in the sum of $1,620 and interest from the date of the filing of the bill, and that execution issue therefor, and dismissing the bill as against Ellen Morrissey individually. The plaintiff appealed. There are findings of fact by the trial judge, but the evidence is not reported.

Michael Morrissey died October 23, 1929. On the preceding July 5, and before, he was indebted to the plaintiff in the sum of $1,620 for room, board and care of his mother — also the mother of the plaintiff. On this date the deceased, being in good health, went with his wife, Ellen Morrissey, to two savings banks and transferred deposits therein, aggregating $3,971.68 in amount, from his name "to the joint name of himself and his wife with the right of survivorship." At that time the deceased had no other property except his clothing. The judge found "that this transfer was made without consideration and was a gift to his wife; that the gift was not made with any intent to hinder, delay or defraud creditors and that this transfer did not make Michael insolvent."

On these findings the transfer of the savings bank deposits was not a fraudulent conveyance within the provisions of G. L. (Ter. Ed.) c. 109A, dealing with such conveyances, but it would have been a fraudulent conveyance if the deceased was rendered insolvent thereby. (§ 4) The plaintiff contends that the judge's finding that the transfer did not make the deceased insolvent was a wrong conclusion from the other facts found. But this finding does not purport to be based solely upon other findings and is not incompatible with anything therein. See *Coghlin* v. *White,* 273 Mass. 53, 55.

By statutory definition in G. L. (Ter. Ed.) c. 109A, a "person is insolvent within the meaning of this chapter when the present fair salable value of his assets is less than the amount that will be required to pay his probable lia-

bility on his existing debts as they become absolute and matured" (§ 2 [1]), and the "assets" of a debtor as here used "means property not exempt from liability for his debts." (§ 1)

We interpret the findings of the judge to mean that the deceased made a present gift to his wife, not of the deposits themselves but of such interests therein as are implied from the terms of deposit upon which they were held by the banks. Such a gift could be effected in accordance with the principle applied in the case of *Chippendale* v. *North Adams Savings Bank*, 222 Mass. 499, and the cases following it, by the banks entering into new contracts of deposit with the deceased and his wife, in substitution for the prior contracts of deposit with the deceased, if the deceased, as the judge may have found, intended that result. This is true even if, as does not appear, the savings bank books were never delivered to the wife. *Perry* v. *Leveroni*, 252 Mass. 390, 393. *Holyoke National Bank* v. *Bailey*, 273 Mass. 551, 554–555. See also *Battles* v. *Millbury Savings Bank*, 250 Mass. 180, 187–188; *Rockefeller* v. *Davenport*, 277 Mass. 105; *Barnes* v. *Chandler*, 277 Mass. 395. And the incapacity of a married woman to contract with her husband (see G. L. [Ter. Ed.] c. 209, § 2; *Boland* v. *McKowen*, 189 Mass. 563, 565), would not stand in the way of such a gift, for no contract between the deceased and his wife would be required. See *Brown* v. *Brown*, 174 Mass. 197.

The interests of the deceased and his wife in each savings bank deposit, implied from the terms of deposit, obviously constituted some kind of joint ownership with right of survivorship.

Joint ownership of real or personal property with right of survivorship created by a transfer to husband and wife is presumably a tenancy by entirety, though an ordinary joint tenancy or some other form of joint ownership by them could be created if the intention to do so clearly appeared. *Hoag* v. *Hoag*, 213 Mass. 50, 53–54. *Woodard* v. *Woodard*, 216 Mass. 1, 2. *Ames* v. *Chandler*, 265 Mass. 428, 431–432. The language of the contracts of deposit, as described in the findings, is apt for the creation of a tenancy by entirety.

Each deposit was transferred by the deceased "to the joint name of himself and his wife with the right of survivorship." These words taken in their natural sense describe a tenancy in a deposit such that, as in the case of a tenancy by entirety, nothing could be drawn from the deposit "except upon the joint order or receipt of the two during their joint lives." *Marble* v. *Treasurer & Receiver General*, 245 Mass. 504, 509. Nothing in the findings compels the conclusion that the parties did not intend to create a tenancy by entirety. If husband and wife took by contracts with the banks the transaction is not open to the objection that a husband cannot convey to himself and his wife an estate by entirety. *Brown* v. *Brown*, 174 Mass. 197. Compare G. L. (Ter. Ed.) c. 209, § 3; *Ames* v. *Chandler*, 265 Mass. 428, 430–431.

The interests of the deceased in the deposits, if he was a tenant by entirety, were liable for his debts. *Raptes* v. *Pappas*, 259 Mass. 37. See also *Phelps* v. *Simons*, 159 Mass. 415; *Licker* v. *Gluskin*, 265 Mass. 403, 406–407. The interest of the deceased in each deposit was the entire income thereof during his life with the possibility of absolute title thereto if he should survive, while his wife's interest was merely the possibility of absolute title if she survived. *Licker* v. *Gluskin*, 265 Mass. 403, 406. See also *Phelps* v. *Simons*, 159 Mass. 415, 418; *Raptes* v. *Pappas*, 259 Mass. 37, 39. If the "fair salable value" of such interests of the deceased at the time they were created by the transfer was not less than the amount of his indebtedness, the transfer would not render him insolvent. G. L. (Ter. Ed.) c. 109A, § 2. Though these interests became of little value to him by reason of his death less than four months after the transfer, leaving his wife surviving, we cannot say on the basis of facts found and matters of common knowledge that the judge would have been plainly wrong in finding that at the time of the transfer they were worth not less than the amount of his indebtedness.

The findings of the judge, however, do not purport to state the precise terms of the contracts of deposit (compare *Hayward* v. *Cain*, 110 Mass. 273, 279), and, though naturally implying the creation of a tenancy by entirety, are not incom-

patible with a finding that an ordinary joint tenancy was created. If such a tenancy was created the deceased, at any time during the joint lives of himself and his wife, could have severed the tenancy and withdrawn his share of each deposit and his wife could have withdrawn only her share thereof. *Marble* v. *Treasurer & Receiver General*, 245 Mass. 504, 509. Compare *Bernatavicius* v. *Bernatavicius*, 259 Mass. 486. His interests in such deposits were liable for his debts. See G. L. (Ter. Ed.) c. 167, § 14; c. 214, § 3 (7); c. 223, §§ 102–105; c. 236, § 1; *Hayden* v. *Binney*, 7 Gray, 416; *Ames* v. *Chandler*, 265 Mass. 428, 433; *R. H. White Co.* v. *Lees*, 267 Mass. 112; *Hills* v. *Webber*, 17 T. L. R. 513. And they could have been found to have had a value at the time of the transfer not less than the amount of his indebtedness.

Even if the contracts with the banks created such a joint ownership of the deposits with right of survivorship as was considered in *Marble* v. *Treasurer & Receiver General*, 245 Mass. 504, (see also *Johnson* v. *Nourse*, 258 Mass. 417, 419–420), where, during the joint lives of the husband and wife, either of them could have withdrawn the whole or any part of these deposits on his or her individual receipt and disposed of the money on his or her individual account, pages 508, 509, the transfer did not render the deceased insolvent. At any time during the joint lives of the deceased and his wife the deposits, if not previously withdrawn, could have been attached in a suit against the deceased and, since the wife could show no superior title thereto, could have been held for his indebtedness. *R. H. White Co.* v. *Lees*, 267 Mass. 112. See *Samuels* v. *Charles E. Fogg Co.* 258 Mass. 402, 406. It does not appear that the whole or any part of the deposits was withdrawn during his lifetime.

We are not required to consider whether the transfer in the circumstances in which it was made would have warranted the inference of actual intent on the part of the deceased to hinder, delay or defraud his creditors. G. L. (Ter. Ed.) c. 109A, § 7. The judge found expressly that there was no such intent and the plaintiff properly does not contend that this finding was plainly wrong.

*Decree affirmed.*