ROBERT G. OATES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent JOAN A. SNELLING, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Oates v. Commissioner
Docket Nos. 4309-74, 4335-74.
United States Tax Court
T.C. Memo 1977-57; 1977 Tax Ct. Memo LEXIS 383; 36 T.C.M. (CCH) 255; T.C.M. (RIA) 770057; March 9, 1977, Filed Robert G. Oates, pro se in Docket No. 4309-74. Paul R. Gauron,Herbert L. Williams and Herbert Baer, for the petitioner in Docket No. 4335-74. Jack R. Selzer, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in the Federal income tax of petitioner, Robert G. Oates, in the amount of $6,592.93 for the calendar year 1968. Respondent determined a deficiency in the Federal income tax of petitioner, Joan A. Snelling, in the amount of $4,557.96 and an addition to tax under section 6651(a), I.R.C. 1954, [1] in the amount of $1,139.49 *384 for the calendar year 1968. [2]
Some of the issues raised by the pleadings in the case of Robert G. Oates have been disposed of by agreement of the parties, leaving for decision the following: (1) Whether the long-term capital gain and short-term capital loss realized on certain sales of stock held in a margin account by Robert G. Oates and his then wife as joint tenants with right of survivorship are includable and deductible *385 in full by Robert G. Oates in computing his taxable income for the year 1968 or whether his then wife, now Joan A. Snelling, should include one-half of such gain and deduct one-half of such loss in computing her taxable income for that year; and (2) whether petitioner, Joan A. Snelling, is liable for an addition to tax pursuant to section 6651(a). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, Robert G. Oates, was a resident of Hingham, Massachusetts at the time his petition in this case was filed. He filed an individual income tax return for the calendar year 1968 with the District Director of Internal Revenue at Boston, Massachusetts. Petitioner, Joan A. Snelling, was a resident of Milton, Massachusetts at the time of the filing of her petition in this case.She filed an individual Federal income tax return for the calendar year 1968 with the District Director of Internal Revenue at Quincy, Massachusetts. At the beginning of the taxable year in issue Dr. Oates and Mrs. Snelling were married and living together as husband and wife. At this time each petitioner owned individually a stock account maintained with the brokerage *386 firm of H. C. Wainwright and Co. at Boston, Massachusetts. In addition, the petitioners had a stock account with H. C. Wainwright and Co. owned by "Robert G. Oates and Mrs. Joan A. Oates, joint tenants with right of survivorship." This account was a margin account. The shares of stock in this account were retained in a street name. The following schedule shows the sales, dates of sales, and gain or loss with respect to stock in petitioners' joint margin account between January 1, 1968 and April 23, 1968: No.
Sold
Purchased
Name of Stock
Shares
Date
Amount
Date
Amount
Gain(Loss)
Short-Term:
Technicolor, Inc.
700
4/2/68
$15,768.01
2/2/68
$18,248.16
[2,480.15)
Long-Term: Zapata Off-Shore
100
1/6/68
$ 6,410.00
12/30/66
$ 875.00
$ 5,535.00
Zapata Off-Shore
100
1/23/68
9,508.74
4/25/67
5,244.20
4,264.54
Zapata Off-Shore
200
1/23/68
18,967.53
6/12/67
12,315.22
6,652.31
Zapata Off-Shore
700
3/6/68
29,432.65
12/27/66
7,047.88
22,384.77
Zapata Off-Shore
300
3/6/68
12,352.82
( 1/3/67
3,398.31
( 2/2/67
7,676.00
1,278.51
Zapata Off-Shore
400
3/6/68
16,818.66
2/28/67
8,078.00
8,740.66
$93,490.40
$44,634.61
$48,855.79
*387 This joint margin account was established in 1966.The source of funds to open the account was from a mortgage placed on the residence of Dr. Oates and his then wife. This property was situated in Milton, Massachusetts with title to the land being held by petitioners as tenants by the entirety. The home was purchased in 1961 for approximately $55,000. Of this amount, approximately $50,000 was received as a gift from Dr. Oates' mother. [3] In 1966 the home was mortgaged to the extent of $30,000 with $27,834.11 of the funds received from the mortgage loan being used to establish the joint margin account involved herein on December 22, 1966.
During 1968 petitioners had marital difficulty. Dr. Oates and Mrs. Snelling lived together until January 26, 1968, at which time they agreed to a separation. In late January *388 or early February 1968, petitioners reached an oral agreement that Mrs. Snelling would release any rights that she had with respect to property held in joint names (to include the joint margin account maintained with H. C. Wainwright and Co.) other than the marital home in exchange for that home. After this date Mrs. Snelling was not aware of any trading activity that occurred with respect to this account. Prior to this agreement, petitioners occasionally discussed prospective trades in the joint margin account contemplated by Dr. Oates. Although this account was in the name of both petitioners, and had been so placed at the request of Mrs. Snelling, Dr. Oates placed all trading orders with the brokerage firm with respect to this account. The proceeds of the dividend checks received on stocks held in the account were not received by Mrs. Snelling although she did endorse the checks, which were made payable to them jointly. On April 23, 1968, petitioners reached a written agreement in which certain arrangements were made with respect to property, future support obligations and custody matters. This agreement provided in part as follows: Section 1: The Husband shall upon *389 the execution of this Agreement execute a deed of release of his interest to the Wife in the real estate known as and numbered 27 Forest Street, Milton, Massachusetts, and shall deliver the same to J. A. Alpert, Attorney, to be held in escrow by him for delivery to the Wife on January 15, 1969, provided a decree nisi of divorce has been entered and has become final and at such time the Husband shall also satisfy any mortgage on said real estate placed thereon by the Husband and Wife so that the Wife shall receive said premises free and clear of any such mortgage encumbrances. Section 2: The Husband shall continue to make the mortgage payments on the Existing mortgage on the residence to the mortgagee which payment shall include principal, interest and taxes in the approximate amount of THREE HUNDRED FIFTY-NINE DOLLARS ($359.00) a month until said mortgage is paid in full. Thereafter the Wife shall be responsible for the payment of all taxes on the property owned by her. * * *
Section 7: The Wife agrees to release to the Husband all her right, title and interest in and to all personal property, tangible or intangible, in the possession of the Husband, and specifically *390 agrees to release, quitclaim, assign and transfer to the Husband, all her right, title and interest in and to all securities presently standing in the joint names of the Husband and Wife and agrees to sign any documents required to make the transfer effective. Such documents of release and transfer signed by the Wife shall be held in escrow by J. A. Alpert, Esquire, to be delivered to the Husband only after a decree divorcing the parties has become final and the Husband has paid off the balance of the mortgage on the residence and has conveyed all his interest therein to the Wife. * * * At a subsequent date, an amendment to the agreement of April 23, 1968, which provided as follows, was made: Anything to the contrary notwithstanding in Article 2, Section 7 of an Agreement made April 23, 1968, by and between Joan Oates (therein referred to as the "Wife") and Robert G. Oates (therein referred to as the "Husband") IT IS AGREED that the "Husband" shall have the right to sell, transfer, assign, or exchange any and all securities or cash accounts in brokerage firms standing in the joint names of the "Husband" and "Wife" and use the documents signed by the "Wife" that are required to *391 make the transfers effective provided that prior to any sale, transfer, assignment or exchange of said securities or cash accounts in brokerage firms the "Husband" shall deposit with J. A. Alpert, Esquire, to be held in escrow sufficient collateral or securities in an amount of not less than $30,000.00 with the right of substitution. On June 10, 1968, the Probate Court, Norfolk County, Commonwealth of Massachusetts, entered a decree of divorce nisi of petitioners. After the proper waiting period of 6 months, this decree became a final decree of divorce on December 11, 1968. For the year 1968, petitioners filed individual Federal income tax returns. With respect to the joint margin account, Dr. Oates reported one-half of the gain and loss in the account which was realized between January 1, 1968 and April 23, 1968. Gain or loss realized from sales of stock held in the account during the remainder of 1968 was reported in full by Dr. Oates. The remaining one-half of the gain and loss realized between January 1, 1968 and April 23, 1968, was not reported by either Dr. Oates or Mrs. Snelling. Mrs. Snelling filed her 1968 Federal income tax return on November 11, 1971. No extension *392 of time for filing of the return was requested. Mrs. Snelling approached an accountant either in April or May of 1969 with respect to preparation of her 1968 return. He prepared her return on May 9, 1969. The return was filed after an auditor of the Internal Revenue Service had made some inquiries with respect to Mrs. Snelling's 1968 return, which the agent had not been able to locate. On the 1968 income tax return filed by Mrs. Snelling, taxable income was reported as $9,215.92, which consisted entirely of alimony and capital gains from her individual brokerage account.No amount of the capital gain or loss of the jointly owned brokerage account was reported by Mrs. Snelling on her return. The total tax reported was $2,118.24 and no credits for payments of tax were claimed on the return. In the statutory notice of deficiency mailed to Dr. Oates, respondent made the following determination: (a) Gain from sale of securities
It is determined that you realized an additional long-term capital gain of $24,427.89 and short-term capital loss of $1,240.08 from sales of stock during the period January 1 through April 23, 1968. The stock was sold in your behalf by H. C. Wainwright *393 & Co. from a margin account held in the names of Robert G. Oates and Mrs. Joan A. Oates. The net gain of $23,187.81 is taxable income subject to the 50 percent deduction provided by Section 1202 of the Internal Revenue Code. Accordingly, your taxable income is increased by $11,593.91. In the statutory notice of deficiency mailed to Mrs. Snelling, respondent made the following determination: (a) Gain from sale of securities
It is determined that you realized an additional long-term capital gain of $24,427.89 and a short-term loss of $1,420.07 from sales of stock during the period January 1 through April 23, 1968. [4]
The stock was sold in your behalf by H. C. Wainwright & Co. from a margin account held in the names of Robert G. Oates and Mrs. Joan A. Oates. Accordingly, your taxable income is increased by $10,986.63, computed as *394 follows: * * *
OPINION Dr. Oates takes the position that the securities in the joint margin account were owned by him and his former wife equally and therefore each is liable for the income tax on one-half of the gain and loss realized prior to April 23, 1968, the date on which Mrs. Snelling transferred her interest in the account to him through the property settlement agreement. It is Dr. Oates' contention that the ownership of the stock as joint tenants with right of survivorship is by definition equal ownership and therefore he and his former wife should share the tax liability occasioned by the various sales in the account from January 1, 1968 to April 23, 1968. It is Mrs. Snelling's position that under applicable Massachusetts law she and Dr. Oates owned the joint margin account as tenants by the entirety and that where property is so owned all the profits or losses from that property are those of the husband. Mrs. Snelling argues that the cases of Robert C. Cooley,27 B.T.A. 986 (1933), affd. 75 F.2d 188 (1st Cir. 1935), and Theodore Milgroom,31 T.C. 1256 (1959), so hold. Respondent at the trial took the position *395 of merely a "stakeholder" having asserted a deficiency against each of the petitioners based upon the income tax liability created from the one-half of the capital gain less the one-half of the capital loss realized in the joint margin account which was not reported in the income tax return of either petitioner. However, on brief respondent states that in his view Mrs. Snelling's position is correct under Massachusetts law and the facts here present. The crucial question is whether Dr. Oates had the right to the entire amount of the gains and losses realized from sale of securities in the joint margin account from January 1 through April 23, 1968, or whether he was entitled to only one-half of the proceeds with Mrs. Snelling being entitled to the other one-half. This is a question upon which state law is controlling. Theodore Milgroom,supra at 1259. All parties recognize that since both petitioners were domiciled in Massachusetts it is the law of that state which is controlling. Under Massachusetts law, property held by husband and wife as joint tenants is deemed to be held by them as tenants by the entirety unless a contrary intent appears from the terms *396 of the instrument creating the joint tenancy. In Hoag v. Hoag,213 Mass. 50, 99 N.E. 521 (1912), the Court was faced with the issue of whether a husband and wife held real property as joint tenants or as tenants by the entirety where the habendum clause of the deed was to the grantees "as joint tenants in joint tenancy, and to the survivor of them and their and such survivors, heirs and assigns, to their own use and behoof forever." The Court stated that a husband and wife can hold land in joint tenancy, but concluded that "one of the principal common-law rules of construction upon this subject is that the same words of conveyance which would make other grantees joint tenants will make a husband and wife joint tenants by entirety. [Citation omitted.] Such is presumed to be the intention." The fact that language has been used which would normally create a joint tenancy will not rebut the presumption that where a husband and wife take title to property a tenancy by the entirety was intended. Childs v. Childs,293 Mass. 67, 199 N.E. 383 (Mass. 1936). Although the Hoag case dealt with real estate, it is well established in Massachusetts that a tenancy *397 by the entirety exists in personal property as well as real property with the same general rules of construction being applicable. In Finn v. Finn,348 Mass. 443, 204 N.E. 2d 293 (1965), the Court held that stock issued to a husband and wife "as joint tenants with right of survivorship and not as tenants in common" created ownership as tenants by the entirety during their marriage. The Court stated that-- [Under] our decisions they could hold property, real or personal, as joint tenants, where such an intention was unmistakably shown. [Citation omitted.] Absent a clear showing that a joint tenancy was intended, however, a husband and wife hold property as tenants by the entirety. The effect of this rule has been that, unless the deed expressly negates the existence of a tenancy by the entirety, the common law operates to establish this form of coownership.
See also, Franz v. Franz.308 Mass. 262, 32 N.E. 2d 205 (1941); Splaine v. Morrissey,282 Mass. 217, 184 N.E. 670 (1933). Therefore, under Massachusetts law, petitioners are presumed to have held the brokerage account here involved as tenants by the entirety unless *398 there was an express negation of the creation of such an interest. Dr. Oates argues that the proceeds used to establish the joint margin account were obtained through a chain of events which lends an inference that a joint tenancy was intended. Dr. Oates maintains that he and his wife were given $50,000 in 1960 by Dr. Oates' mother, with such amount constituting a joint gift. This money in turn was used to purchase their personal residence which they held as tenants by the entirety, with the home later being mortgaged to provide funds to create the account. Therefore, under Dr. Oates' argument, "[the] money used to purchase stocks in the joint stock account was jointly owned money coming directly from a mortgage on a jointly owned house purchased with money from a joint gift of cash from Oates' mother." We find Dr. Oates' argument to be without merit. The evidence does not support the factual basis of Dr. Oates' argument since the testimony as to whether the gift from his mother was a joint gift or a gift to him alone is conflicting and inconclusive. However, even if the gift were a joint gift, the house purchased with the funds was held by petitioners as tenants by the entirety *399 and not as joint tenants. Where amounts are received either from a mortgage placed on property held by spouses as tenants by the entirety or proceeds received from disposition of such property, such proceeds are held by the spouses as tenants by the entirety. Under Massachusetts law the husband has the right to the use of these proceeds and the income therefrom, even though the wife contributed to the purchase of the property with her own funds. Campagna v. Campagna,337 Mass. 599, 150 N.E. 2d 699 (1958); Ronan v. Ronan,339 Mass. 460, 159 N.E. 2d 653 (1958). Therefore, even if Mrs. Snelling contributed funds to the purchase of the house, her husband would be entitled to the possession and income and profits of funds received from a mortgage placed on the house during their marriage. Furthermore, since the brokerage account was held by them as tenants by the entirety, the income and possession of the profits from that account were Dr. Oates' as long as he and Mrs. Snelling were married. Dr. Oates argues that the property settlement between him and Mrs. Snelling contemplated an essentially equal division of their "jointly" owned assets. He also *400 points out that Mrs. Snelling released her rights to the securities in the property settlement and argues that this indicates the parties understood this account was expressly a joint tenancy. The contract between the brokerage firm and petitioners for the joint margin account contains no express negation of the creation of a tenancy by the entirety and therefore this account was held in such ownership. Hoag v. Hoag,supra;Finn v. Finn,supra;Splaine v. Morrissey,supra. The factors which Dr. Oates argues show that there was an express intent to create a joint tenancy and not a tenancy by the entirety fall far short of supporting his conclusion. We note, for example, that if the ownership of the joint margin account had not been provided for in the property settlement agreement, the account would have been converted to tenancy in common between the parties upon their divorce. See Finn v. Finn,supra, at 296. There is nothing in this record to rebut the presumption under Massachusetts law that the creation of title in the joint names of Dr. Oates and his wife was intended to create a tenancy by the entirety. *401 [5]
Having concluded that the parties held the title to the joint margin account as tenants by the entirety under Massachusetts law, our prior decisions in Robert C. Cooley,supra, and Theodore Milgroom,supra, are dispositive of the issue. In the Cooley case we held that all dividends and interest received on stocks and bonds held by a taxpayer and his wife as tenants by the entirety were the income of the husband and taxable to him. The Milgroom case involved a taxpayer who was divorced from his wife during the taxable year there in issue. During that year and prior to the date the divorce became final, the taxpayer and his wife sold their personal residence which was held by them as tenants by the entirety. In determining the sales price *402 of the residence a sum of unpaid mortgage interest and taxes due on the property was deducted by the buyer from the amount remitted. The husband-taxpayer deducted the full amount of the previously unpaid mortgage interest and taxes on his individual Federal income tax return. In sustaining the husband-taxpayer's position, we concluded: Since a husband is entitled under the law of Massachusetts to the possession of property held in a tenancy by the entirety, it would follow that he is entitled to the possession of the proceeds of such property. See Childs v. Childs,293 Mass. 67, 199 N.E. 383. Therefore we conclude that petitioner was entitled to the proceeds of the sale of the property here in question, and when a part of such proceeds was, with his consent, expended for the payment of taxes and interest for which he was liable there was in effect a payment by him of such taxes and interest in their total amount. [Emphasis supplied.] We conclude that under Massachusetts law Dr. Oates was entitled to possession of the gains from the sale of the stock held in the joint margin account and any income generated by those gains. In our view this is sufficient *403 interest in these gains to require Dr. Oates to include in his income the entire gain on the sale of the securities for the year 1968 and it follows that he is entitled to deduct the capital loss. Respondent, in his statutory notice of deficiency, determined that Mrs. Snelling was liable for a 25 percent addition to tax under section 6651(a). [6] However, in the notice of deficiency this addition to tax was based on 25 percent of the proposed deficiency and respondent on brief concedes that, if there is no deficiency due from Mrs. Snelling, there is no addition to tax due from her. [7] Therefore, even though Mrs. Snelling has not shown reasonable cause for the late filing of her return, since we have determined that there is no deficiency in tax for 1968 due from Mrs. Snelling, there is no addition to tax due from her for this year. *404 Decision will be entered under Rule 155 in Docket No. 4309-74. Decision will be entered for the petitioner in Docket No. 4335-74, but such entry will be delayed until entry of decision in Docket No. 4309-74. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. In the statutory notice of deficiency mailed to Mrs. Snelling, respondent determined a deficiency in the amount of $4,511.52 and an addition to tax under sec. 6651(a) in the amount of $1,127.88. However, in computing the amount of the deficiency, respondent erroneously transposed two numbers, thereby understating the net capital gain used in determining the amount of the deficiency in the amount of $180. Therefore, respondent, by amendment to answer, claims an additional deficiency of $46.44 and an increase in the addition to tax under sec. 6651(a)↩ in the amount of $11.61. The parties are in agreement that these numbers were transposed.
3. The evidence is conflicting as to whether the $50,000 gift was to Dr. Oates only or to both Dr. Oates and his then wife. At the trial he testified that the gift was to both of them and she testified that the gift was to Dr. Oates only. It is immaterial under the view we take of this case as to which party correctly understood to whom the $50,000 gift was made.↩
4. As previously noted, respondent transposed the correct amount of short-term capital loss used in determining the net long-term capital gain. The correct amount of short-term capital loss was $1,240.07, thereby resulting in an increase in taxable income in the amount of $90 (after application of sec. 1202↩).
5. From 1912 to 1973 the Hoag rule was firmly embedded in Massachusetts law. However, Chapter 210 of the Acts of 1973 amended Mass. Gen. Laws Ch. 184, sec. 7 (1932), to eliminate the Hoag↩ rule with respect to real property. Under this amendment a husband and wife taking real property as joint tenants will be deemed to hold such property as joint tenants.
6. For the year in issue, sec. 6651 in pertinent part provided as follows: SEC. 6651. FAILURE TO FILE TAX RETURN. (a) Addition to the Tax. -- In case of failure to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), of subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate. (b) Penalty Imposed on Net Amount Due.--For purposes of subsection (a), the amount of tax required to be shown on the return shall be reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax which may be claimed upon the return. ↩
7. Prior to the issuance of the statutory notice of deficiency, respondent apparently assessed the addition to tax for late filing of the return based upon the amount of tax shown on Mrs. Snelling's return as filed.↩